Robert Leon POWELL, Plaintiff,

v.

STATE OF NEW YORK; New York State Office of Alcoholism and Substance Abuse Services; Marguerite Saunders, as Commissioner of the Office of Alcoholism and Substance Abuse Services; New York State Civil Service Commission; and Joseph Gambino, as Commissioner of the New York State Civil Service Department, Defendants.

No. 93–CV–957.

United States District Court,
N.D. New York.

Nov. 14, 1994.

Public Employees Federation, Albany, NY (Lisa M. King, of counsel), for plaintiff.

G. Oliver Koppell, Atty. Gen., Dept. of Law, Albany, NY (Judith I. Ratner, Asst. Atty. Gen.), for defendants.

## MEMORANDUM, DECISION & ORDER

McAVOY, Chief Judge.

## I. BACKGROUND

New York Civil Service Law § 55–c ("CSL § 55–c") provides for the employment of up to 300 disabled veterans by the State of New York. This section provides that a disabled veteran can be appointed to a competitive class civil service position without taking the

civil service exam. The person does have to go through a different qualification process, however: the individual must be certified as disabled, qualified for the position, and be able to perform the duties of the job.

Once a veteran is appointed through this process, the position that he receives is changed from a competitive class position to a noncompetitive class position. The job retention rights in a noncompetitive position are less than those of a competitive position. Therefore, a veteran appointed under CSL § 55–c has fewer job retention rights than similarly situated persons holding the same title in the competitive class.

Plaintiff is a Vietnam War veteran with post-traumatic stress disorder and a knee disability. He is also a recovering alcoholic and substance abuser. He obtained state employment through the CSL § 55–c program as a entry level Substance Abuse Specialist (SAS I) on September 28, 1989. He was permanently appointed to this position on December 4, 1989 and he received good performance evaluations for his work.

This position is also available as a competitive class job with the same job description. As just described, once plaintiff was hired for the job, the classification of his position changed from the competitive "SAS I" to the noncompetitive "SAS I (55–c)." Thus, his job retention rights were governed by CSL § 80–a which applies to noncompetitive positions rather than CSL § 80 which governs competitive positions. Ultimately, this meant that in the event of a layoff, plaintiff had no right to displace or bump a less senior SAS I in the competitive class. Thus, if a layoff occurred, he could be let go before a less senior SAS I regardless of the fact that he had worked there longer.

Such a scenario did occur on July 31, 1991 when plaintiff was laid off from his job due to a reduction in force at the Office of Alcoholism and Substance Abuse Services (OASAS). Plaintiff was laid off before two less senior competitive class employees. Thus, plaintiff claims that he was discriminated against based on his disability. He asserts that because his job retention rights are not the same as those of his coworkers in the competitive class, he has been discriminated against based on his disability. Therefore, he brings a facial challenge to the validity of CSL § 55–c which classifies employees as noncompetitive claiming that it violates § 504 of the Rehabilitation Act of 1973.

Both plaintiff and defendants have moved for summary judgment on the Rehabilitation Act claim. Defendants have also moved for dismissal of the accompanying claim under the Americans with Disabilities Act (ADA). These claims will be discussed seriatim.

## II. DISCUSSION

### A. Standard for Summary Judgment

 Summary judgment is appropriate when no genuine issues of material fact exist, and thus the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). There must be more than a "metaphysical doubt as to the material facts." *Delaware & H. Ry. v. Conrail*, 902 F.2d 174, 178 (2d Cir.1990), *quoting, Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). All ambiguities must be weighed in favor of the nonmoving party. *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991) *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

### B. Rehabilitation Act Claim

 § 504 of the Rehabilitation Act provides that:

No otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...

29 U.S.C.A. § 794 (West Supp.1994).

The Second Circuit has set forth the requirements of a prima facie case under § 504 of the Rehabilitation Act. To prevail, a plaintiff must show that: (1) he is a handicapped

person under the Act; (2) he is otherwise qualified for the position sought; (3) he has been excluded from the position solely because of his handicap; and (4) the position exists as part of a program or activity that receives federal financial aid. *Doe v. New York Univ.*, 666 F.2d 761, 774 (2d Cir.1981). After a prima facie showing has been made, the burden shifts to the defendant to rebut the inference that the handicap was improperly considered in the employment decision. *Id.* at 776. Finally, plaintiff must prove by a preponderance of the evidence that the defendant's explanation of the reason behind the employment decision was a pretext for illegal discrimination. *Id.* at 776–77.

■ It is not disputed in this case that plaintiff worked for a state agency receiving federal financial assistance, and that he is an individual with a disability who was otherwise qualified for the position he held.[1] There is also no dispute that the plaintiff's responsibilities as an "SAS I (55–c)" were the same as those of the corresponding competitive position, "SAS I." The state does not attempt to refute plaintiff's showing that he performed his job satisfactorily and received good performance evaluations. The only true question regarding plaintiff's prima facie case is whether plaintiff was excluded from the position solely due to his disability.

In support of his assertion that he was discriminated against solely due to his disability, plaintiff turns the court's attention to two District of Columbia Circuit Court decisions involving disabled federal employees, *Allen v. Heckler*, 780 F.2d 64 (D.C.Cir.1985) and *Shirey v. Devine*, 670 F.2d 1188 (D.C.Cir.1982). But however persuasive their authority, a more similar case in the Northern District of New York, the decision in which was affirmed by the Second Circuit, properly guides this court's reasoning in the case before it.[2] *See Villines v. Harris*, 487 F.Supp. 1278, 1279 n. 1 (D.N.J.1980) (noting the obvious principle that decisions of the

Court of Appeals of a particular circuit are binding on the district courts within that circuit but are not binding on either circuit or district courts in other circuits). Therefore, the court finds it unnecessary to undertake a detailed analysis of the *Shirey* and *Allen* decisions. It is appropriate, however, to discuss the very similar the Northern District of New York case.

The unpublished Northern District case, *Realbuto v. Howe*, 92–CV–1003, 1993 WL 761058 (N.D.N.Y. Nov. 8, 1993) (Cholakis, J.), involved a claim that the termination of a disabled state employee classified under § 55–b of New York Civil Service Law in a noncompetitive position violated § 504 of the Rehabilitation Act. The court ruled on cross-motions for summary judgment finding that plaintiff could not make a prima facie showing that the decision to terminate her was discrimination based solely on her handicap. Thus, the court dismissed the § 504 Rehabilitation Act claim by granting summary judgment in favor of the defendants. Judge Cholakis found, unlike the court in *Shirey* and *Allen*, that the different hiring treatment justified the different and less favorable job retention rights of plaintiff's position.

The only true difference between the issue in *Realbuto* and the one now facing the court is the section of the Civil Service Law which plaintiff claims is discriminatory. And, in fact, there is only a minimal difference between CSL § 55–c at issue in this case and CSL § 55–b at issue in *Realbuto*. CSL § 55–b allows the New York State Civil Service Commission to determine up to 1,200 positions with duties which could be performed by individuals with physical or mental disabilities. Under CSL § 55–b, such positions are to be classified in the noncompetitive class and are to be filled by physically or mentally disabled individuals who are otherwise capable of performing the duties of the job. CSL § 55–c allows the Civil Service Commission to determine up to 300 positions

---

1. Substance abuse is a handicap under the Rehabilitation Act. *Teahan v. Metro–North Commuter R.R. Co.*, 951 F.2d 511, 517 (2d Cir.1991). Post traumatic stress disorder is also a disability under the Act. *Lussier v. Runyon*, 1994 WL 129776 (D.Me. Mar. 1, 1994).

2. While the court notes that it is not technically bound by the Second Circuit decision because the case involved a different section of the New York Civil Service Law, the issue presented was so similar as to be extremely persuasive in this court's reasoning.

with duties which could be performed by veterans with physical or mental disabilities. Like CSL § 55–b, these positions are to be classified in the noncompetitive class and filled only by veterans with mental or physical disabilities who otherwise are capable of performing the job's requirements. Given the striking similarity between the *Realbuto* case and this one, and the court's determination that the reasoning in the *Realbuto* case is logical and applicable to the case at hand, the court follows in its footsteps.

■ Plaintiff nonetheless urges the court to reject the *Realbuto* decision. Plaintiff asserts that his noncompetitive classification deprived him of the more favorable "bumping rights" held by the employees in the same position in the competitive class even though he performed the same duties as his counterparts who assumed their positions after taking a competitive civil service examination. Plaintiff notes that the decision in *Realbuto* focused much on the voluntariness of plaintiff's choice in becoming a member of the noncompetitive class. The court noted in *Realbuto* that plaintiff chose to take the position under the statutory mandate of § 55–b rather than sit for the competitive civil service exam.[3] Plaintiff in this case attempts to distinguish the *Realbuto* decision on the basis that plaintiff Powell's decision to take the noncompetitive position under § 55–c was not truly voluntary.

Plaintiff first notes that an individual with a disability may not be able to pass a competitive examination because the exam process itself may be discriminatory. Secondly, specific to Mr. Powell's case, no examination was available for the SAS I position at the time he began his job under § 55–c in 1989 or in 1991 when he was laid off. Plaintiff notes that the last exam given for the SAS I position was in January 1988, and so he had no choice but to use the § 55–c route to become an SAS I.

Neither of these arguments has merit. First, plaintiff assumes without supporting authority that the competitive civil service examination *may* be discriminatory in and of itself. Without factual support, however, this court cannot assume this to be true. Secondly, to find that Mr. Powell's use of the § 55–c mandate was involuntary would essentially place him in a better position than non-handicapped individuals seeking the position. It is true that if the competitive examination was not given at the time he sought employment or rehiring, he had no choice but to apply for the position through § 55–c. However, this fact does not indicate an instance of discrimination, but rather a situation which allowed him to obtain a position that was not available to non-handicapped individuals seeking employment as an SAS I at that time. Plaintiff could not have been hired as an SAS I at that time if it were not for his disability. Plaintiff's choice at the time was to become employed by the state as an SAS I under § 55–c or not to be employed in that position at all. This hardly represents a discriminatory situation. *See Alexander v. Choate*, 469 U.S. 287, 300, 105 S.Ct. 712, 720, 83 L.Ed.2d 661 (1985) (noting that § 504 of the Rehabilitation Act only requires that the recipient of federal funds eliminate existing obstacles against the handicapped and does not impose an "affirmative action" requirement on the recipients).

Plaintiff claims that his inability to exercise bumping rights against members of the competitive class is due solely to his disability. This argument does not have merit. Under § 55–c the plaintiff in this case had the ability to bump other noncompetitive class employees in his job classification. *See Shirey*, 670 F.2d at 1190 n. 5. In fact, under § 55–c, plaintiff not only had the ability to bump less senior noncompetitive class employees, but senior competitive class employees could not bump him. *See* New York Civil Service Law §§ 80 and 80–a (noting that bumping may only take place within the

---

**3.** In *Realbuto,* Judge Cholakis stated that "plaintiff ... was well aware that she could take the competitive civil service examination—indeed she did just that when she first joined the State's work force. There is no dispute that Ms. Realbuto knew that the position she sought at OMRDD in 1981 would be reclassified as a "55–b" position, in the noncompetitive class. She simply elected to pursue the noncompetitive position and avoid the competitive examination." *Realbuto* at 9.

individual's job class). Competitive employees are only allowed to bump eligible persons in their own class, just as noncompetitive employees are allowed only to bump less senior members of their class. The fact that plaintiff in this case was the only noncompetitive class member holding his particular job does not change the fact that the system technically provided him bumping rights within his class. The fact that there were no other persons holding his job in the noncompetitive class had nothing to do with his disability; it simply reflected the composition of the work force at that time. Therefore, the restrictions on his bumping rights were not a result of his disabled status, but rather stemmed from his status as a noncompetitive employee.

Under CSL § 80–a all noncompetitive employees are in the same situation regarding bumping rights, and so it is not possible to find that limitations on plaintiff's bumping rights were due solely to his disabled status. Plaintiff has submitted no evidence that he was treated differently than other noncompetitive class employees. Because the court cannot find that plaintiff was treated differently from other noncompetitive class employees, disabled or not, the court cannot find that the state discriminated against him. *See P.C. v. McLaughlin,* 913 F.2d 1033, 1041 (2d Cir.1990) (stating that it is clearly established that § 504 of the Rehabilitation Act only assures "evenhanded treatment" of disabled persons in comparison to nondisabled individuals).

Plaintiff also argues that the § 55–c program presents a different scenario than that of the usual movement of a position from the competitive to noncompetitive class and that this program discriminates against individuals based solely on their disabilities. Generally, positions can only be placed in the noncompetitive class if it is found to be impractical "to ascertain the merit and fitness of applicants by competitive examination." N.Y.Civ.Serv.L. § 42 (McKinney 1983). Once the position is determined to fit properly in the noncompetitive class, all such positions with the same title are placed in the class, in contrast to the situation presented under § 55–c where some positions with the same title remain in the competitive class. Thus, plaintiff argues, he is being treated less favorably because he was appointed pursuant to this special program for disabled individuals.

■ Judge Cholakis rejected this line of argument in *Realbuto,* first distinguishing the *Shirey* and *Allen* decisions by noting that the obligations of the federal government under § 501 of the Rehabilitation Act to the employees in those cases are different than those of federal fund recipients under § 504. § 501 requires that the federal government take "affirmative action" while § 504 only requires that those receiving federal funding make "reasonable accommodations." Reasonable accommodations do not require the recipient of federal funding to make substantial changes in the program receiving funding. *See Realbuto* at 12.

■ Plaintiff essentially seeks the same job retention rights as a competitive employee without having to take a competitive examination. As noted in *Realbuto,* this asks the court to alter the state civil service laws to provide plaintiff with greater benefits because he is disabled rather than to provide equal benefits despite his disability. *Id., citing, Flowers v. Webb,* 575 F.Supp. 1450, 1456 (E.D.N.Y.1983). Such accommodation is not required under § 504 of the Rehabilitation Act. As stated in *Realbuto:*

> [t]he distinction that the Civil Service Law draws between employees who took the examination and those who didn't may seem unsound as a matter of policy, but the Rehabilitation Act does not give the Court the license to rewrite ill-considered State statutes, only to remedy discrimination based on an individual's disability.

> Contrary to the majority's statements in *Allen* and *Shirey,* the Court finds that the change in Ms. Realbuto seeks is not the sort of "reasonable accommodation" that the statute mandates. Reasonable accommodations are those that permit the employee to function as an employee. Under the regulation, a reasonable accommodation is an accommodation "to the known physical or mental limitations of an otherwise qualified handicapped individual" that will not "impose an undue hardship on the

operation of [the recipient's] program." *See* 45 C.F.R. § 84.12(a). As examples of such accommodations, the regulations list changes directed at the person's disability, for example modifying facilities, equipment, scheduling, and providing readers and interpreters. *Id.* at § 84.12(b). The change that Ms. Realbuto seeks is of a different nature; it has nothing to do with her physical or mental limitations but rather with her classification as a noncompetitive employee.

*Realbuto* at 13–14.

The court finds that this reasoning applies squarely to the case before it. Just as in *Realbuto*, the plaintiff here seeks modification of his job retention rights to correspond with those of competitive class employees. This modification has nothing to do with accommodating his handicap itself, but in reality, would give plaintiff additional rights because of his handicap instead of granting him equal rights in spite of his disability. As in *Realbuto*, the court finds that § 504 of the Rehabilitation Act does not require such alterations to the Civil Service Law.

The court also noted hypothetically in *Realbuto* that if § 55–b provided the only means for disabled persons to gain state employment then Ms. Realbuto might have a stronger argument. Plaintiff now relies on this language to show that under § 55–c he had no other choice but to secure his job under this noncompetitive program because a competitive examination for his position was not offered at any time since he took the job. However, the continuation of that statement by Judge Cholakis discredits plaintiff's argument. It reads:

> [i]f Section 55–b represented the State's only attempt at reasonably accommodating handicapped persons who cannot take the exam because of their disabilities, then the failure to provide full competitive benefits (including bumping rights) to handicapped individuals would unfairly discriminate against handicapped persons in violation of the statute. This case, however, does not present that set of facts.

*Realbuto* at 14 n. 5.

The court believes that such a situation is not presented here either. Although the competitive examination for plaintiff's job may not have been offered at any time during his employment with the state, that does not present discrimination based on his disability. In order to secure his position with the state he had no choice at that time but to accept it under the § 55–c program. That was not due, however, to the state's failure to accommodate him in taking the competitive examination for the position. The state simply did not offer the examination during his tenure, and as previously discussed, this actually placed him in a more beneficial position in securing his position than nondisabled persons to whom the § 55–c avenue was not available. Thus, the court does not need to reach a conclusion different than that in *Realbuto* despite the discrepancy in facts. Plaintiff has not demonstrated that he suffered discrimination solely on the basis of his disability, and so, has not made out a prima facie case of discrimination in violation of § 504 of the Rehabilitation Act. Summary judgment is therefore appropriately granted in favor of the defendants.

## C. Americans with Disabilities Act Claim

 Defendants also move for dismissal of plaintiff's claim under the Americans with Disabilities Act of 1990 (ADA) because the Act has no retroactive application to alleged claims accruing before July 26, 1992. "Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988). The language of the ADA states that it "shall become effective 24 months after the date of enactment [July 26, 1990]." Americans with Disabilities Act of 1990, Pub.L. No. 101–336 § 108 (1990); *see* 42 U.S.C.A. § 12111(5)(A) (West Supp.1994) (noting that there is an effective date for the ADA). Based on a passage date for the ADA of July 26, 1990, it did not become effective until July 26, 1992 and it does not apply retroactively. *Verdon v. Consolidated Rail Corp.*, 828 F.Supp. 1129, 1140 (S.D.N.Y.1993). Seeing as plaintiff's

claim accrued on July 31, 1991 when his position was abolished, he has no proper cause of action under the ADA, and so defendants' motion for dismissal is granted.

## III. CONCLUSION

In conclusion, plaintiff cannot prevail on his claim under § 504 of the Rehabilitation Act of 1973, nor can his claim under the ADA withstand defendants' dismissal motion. Accordingly, the court hereby grants the defendants' motions for summary judgment and dismissal, denies plaintiff's motion for summary judgment, and directs the clerk to enter judgment dismissing all claims in this action.

**IT IS SO ORDERED.**