OPINION AND ORDER
 

 SESSIONS, District Judge.
 

 This civil action arises out of Daniel W. Costello’s (“Costello”) employment and subsequent discharge by Gannett Satellite Information Network, Inc., d/b/a The Burlington Free Press (“Gannett”). The matter was referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). The Report and Recommendation of the Magistrate Judge granting summary judgment in favor of Gannett was filed March 27, 1996. Costello filed objections to the Report and Recommendation on April 11, 1996. Gannett filed opposition on May 2, 1996.
 

 This Court must make a
 
 de novo
 
 determination of those portions of the report or specified proposed findings or recommendations to which objection is made. It may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b). After careful review of the file, the Magistrate Judge’s Report and Recommendation, the objections, and response to objections, the Court modifies the proposed recommendations as follows.
 

 Costello seeks recovery for intentional infliction of emotional distress, breach of contract, and negligent infliction of emotional distress. The facts of this ease have been thoroughly and accurately recounted in the Report and Recommendation and need not be repeated here.
 

 I.
 
 Intentional Infliction of Emotional Distress
 

 In the first count of his complaint, Costello alleges that Gannett intentionally caused him emotional distress. Gannett contends that (1) Costello’s claim is barred by the statute of limitations, and (2) Costello cannot establish the elements of a claim for intentional infliction of emotional distress.
 

 A.
 
 Statute of Limitations
 

 Costello objects to the Magistrate Judge’s conclusion that he was not insane for purposes of tolling the statute of limitations.
 
 *315
 
 Viewing the evidence in the light most favorable to Costello, the Court finds that whether Costello was insane so as to toll the statute of limitations presents a question of fact, thereby prohibiting summary judgment.
 
 [1]
 

 In Vermont the statute of limitations for an intentional infliction of emotional distress (“IIED”) claim is three years.
 
 See Fitzgerald v. Congleton,
 
 155 Vt. 283, 291, 583 A.2d 595 (1990) (holding that the plaintiffs claims for damages resulting from her mental anguish, emotional distress, and personal humiliation constitute injuries “to the person” and fall within the three year statute of limitations set forth at 12 Vt.Stat.Ann. § 512(4)). However, the statute of limitations is tolled during periods when a claimant is insane. 12 Vt.Stat.Ann. § 551(b). Here, Costello argues that, although he waited nearly six years after his cause of action accrued to file his complaint, the statute was tolled for at least three years because of his incompetency.
 

 Though the record contains some information regarding Costello’s mental health during these six years, it is by no means complete in this regard. Thus, more fact finding is necessary to establish Costello’s capacity during the relevant period.
 
 See Goode v. State,
 
 147 Vt. 646, 514 A.2d 322 (1986) (reversing district court determination of insanity under 12 Vt.StatAnn. § 551 and remanding for further fact finding when record incomplete on state of plaintiffs mental health),
 
 appeal after remand,
 
 150 Vt. 651, 553 A.2d 142 (1988).
 

 Moreover, there is at least some evidence in the record to support Costello’s claim that he lacked the ability to handle his affairs and understand his legal rights during certain periods of the six years preceding the filing of the complaint. For example, there are physicians’ notes regarding Costello’s depression as well as evidence regarding his failure to file a request for an extension of benefits from Gannett due to his diabetes, despite repeated admonitions to do so, to appeal a denial of his social security benefits and to pay timely his taxes. This is sufficient to raise a genuine issue of material fact regarding Costello’s competency during the six year period. Accordingly, Gannett is not entitled to summary judgment on the grounds that Costello’s claim is time-barred.
 

 B.
 
 Merits
 

 Costello raises a number of objections to the Magistrate Judge’s recommendation to deny recovery for IIED because Gannett’s conduct was not so extreme as to go beyond all possible bounds of decency. At issue is the lower standard for determining outrageous conduct that arises when a defendant has knowledge that the plaintiff is particularly susceptible to emotional distress.
 
 See Denton v. Chittenden Bank,
 
 163 Vt. 62, 655 A.2d 703 (1994). Costello’s principal argument is that, though the Report and Recommendation correctly recites this standard, the Magistrate Judge fails to adhere to it in applying the law to the facts of the case. Costello’s contention is simply incorrect. Therefore, this Court adopts the Magistrate Judge’s recommendation in full in this regard and supplements it as follows.
 

 The basis for the distinction between cases where a defendant does not know of a plaintiffs fragility and cases where a defendant does have such knowledge is the Restatement (Second) of Torts § 46 emt. f (1965), which states:
 

 The extreme and outrageous character of the conduct may arise from the actor’s knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not
 
 *316
 
 know. It must be emphasized again, however, that major outrage is essential to the tort; and the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough.
 

 Although this comment suggests that a defendant’s knowledge of a plaintiffs vulnerability is a factor for a court to consider when assessing whether a defendant’s conduct is extreme and outrageous, “major outrage” is still required. The comment simply notes that the outrage may arise from the fact that a defendant knows of a plaintiffs susceptibility.
 
 [2]
 

 Vermont has said little regarding the proper application of comment f; however, district court cases and cases from other state courts provide guidance and clearly indicate that Costello’s claim cannot survive, despite Gannett’s knowledge of Costello’s depression. In
 
 Mancini v. General Elec. Co.,
 
 820 F.Supp. 141, 148-50 (D.Vt.1993), an IIED case arising out of an employee’s termination, the court applied comment f and granted summary judgment to the defendant employer who had engaged in heated and. hostile arguments with the plaintiff despite its knowledge of plaintiffs emotional problems and susceptibility to stress. Costello cannot point to facts as outrageous as those presented in
 
 Mancini.
 
 No heated, hostile in-person exchanges took place, and, at worst, the letters sent to Costello were pointed, not hostile.
 
 See also Rooney v. Witco Corp.,
 
 722 F.Supp. 1040, 1043-45 (S.D.N.Y.1989) (in IIED claim arising out of benefits payment dispute, defendant entitled to summary judgment because, even though defendant knew of plaintiffs illness, defendant acted “to protect itself and to assure that [plaintiff] would ... collect ... life insurance”);
 
 Jackson v. Peoples Federal Credit Union,
 
 25 Wash.App. 81, 604 P.2d 1025, 1030 (1979) (attempted repossession of car leading to heated argument and aggravation of plaintiffs diabetes does not support IIED claim, even though defendant knew of plaintiffs diabetes, because defendant was simply acting to protect its legal right).
 

 Of the cases arising in other states that hold the defendant liable for IIED when the defendant has knowledge of the plaintiffs emotional or physical weakness, none supports Costello’s claim. Instead, the facts giving rise to these claims are much more egregious than those presented here.
 
 See Mellaly v. Eastman Kodak Co.,
 
 42 Conn.Sup. 17, 597 A.2d 846, 848 (1991) (IIED claim viable when plaintiff showed defendant knew of plaintiffs alcoholism and intentionally taunted and harassed plaintiff regarding same, urging plaintiff to “handle his alcohol and go get drunk” and yelling at plaintiff about recovery);
 
 LaBrier v. Anheuser Ford, Inc.,
 
 612 S.W.2d 790, 793-94 (Mo.Ct.App. 1981) (defendant liable for IIED when it knew of plaintiffs severe emotional problems yet came to plaintiffs house and, in presence of neighbors, yelled at plaintiff regarding plaintiffs husband’s whereabouts, threatening to have an “all points bulletin” issued for husband’s arrest);
 
 Boyle v. Wenk,
 
 378 Mass. 592, 392 N.E.2d 1053, 1055-56 (1979) (defendant private investigator may be liable for IIED when,. with knowledge that plaintiff had just been discharged from hospital, defendant continued to telephone plaintiff late at night and mentioned his prior rape conviction in her presence).
 

 In contrast, in those cases in which a plaintiff was allowed to proceed on an IIED claim, the plaintiff was in a clearly vulnerable position in relation to the defendant.
 
 See Johnson v. Martin,
 
 1996 W.L. 383351, *2-3 (Conn.Super.Ct. June 11, 1996) (IIED claim filed by inmate who received harassing mail from police officers viable);
 
 Anderson v. Prease,
 
 445 A.2d 612, 613 (D.C.Ct.App.1982) (doctor who prescribed medication for plaintiffs nervousness liable for IIED when he cursed and screamed at plaintiff during ap
 
 *317
 
 pointment);
 
 see also
 
 Restatement (Second) of Torts § 46 cmt. e (“extreme and outrageous character of conduct may arise from an abuse by the actor of a position____”). Although Gannett knew of Costello’s depression, none of the actions taken by Gannett to improve Costello’s work habits, inquire about when he would return to work, and gather information necessary to provide Costello with benefits rises to the level of extreme and outrageous conduct.
 

 Costello’s remaining objections to the Report and Recommendation are equally unavailing. Although Costello alleges there were hidden agendas and secret motives underlying the letters and memoranda which preceded his dismissal, he presents no evidence to that effect. While a plaintiff opposing summary judgment is entitled to all inferences that may reasonably be drawn in his favor, there must be evidence supporting such an inference.
 
 Kulak v. City of New York,
 
 88 F.3d 63, 70-71 (2d Cir.1996);
 
 see Baldwin v. Upper Valley Servs., Inc.,
 
 162 Vt. 51, 57, 644 A2d 316, 319 (1994) (rejecting plaintiffs claim that court inappropriately assessed motivations and perceptions of defendant because plaintiff could not provide, beyond his personal belief of motive, any evidence of defendant’s intentionally oppressive behavior);
 
 Rooney,
 
 722 F.Supp. at 1044-45 (plaintiffs IIED claim fails because plaintiff presented no evidence that defendant’s letters and telephone calls regarding benefits payments were designed to harass plaintiff).
 

 There is no evidence to show that the signatories to the May 2, 1988, letter were forced to sign the letter as Costello claims.
 
 See
 
 Erhard Dep. at 103; Welch Dep. at 148. Furthermore, Costello presents no evidence to support his claim that in all cases but his own the Human Resources Director handled employee sick leave matters.
 
 Cf
 
 Erhard Dep. at 82-85
 
 &
 
 166-67. Thus, Costello’s objections are unpersuasive. Gannett’s Motion for Summary Judgment on this claim is granted.
 

 II.
 
 Breach of Contract
 

 Costello asserts that he enjoyed a contractual right to insurance coverage that Gannett breached when it cancelled his COBRA insurance plan in 1994. Attempting to clarify this claim in a rather cryptic footnote in his opposition to summary judgment, Costello states that he will “amend his complaint to clarify the issue of breach of contract for failure to provide LTD [Long-Term Disability] to Costello under the Blue Cross Plan for physical disability.”
 
 [3]
 
 Opp.Mem. to Def.’s Mot.Summ.J. at 24 n. 35. He also alleges that Gannett violated the Americans with Disabilities Act, 42 U.S.C. § 12111
 
 et seq.
 
 (“ADA”), “by not providing a reasonable accommodation for the Plaintiff to protect his rights -under Gannett health plan.” Compl., ¶ 45.
 

 The original breach of contract claim made by Costello in the complaint is clearly untenable. Gannett provided Costello with all COBRA coverage required by law.
 
 See
 
 29 U.S.C. § 1162(2)(A). Because of Gannett’s administrative oversight, Costello received an additional eleven months of COBRA coverage not required by law. There is a complete lack of evidence in the record to support Costello’s claim that he and Gannett entered into an express or implied contract to continue COBRA coverage; his right to COBRA coverage was statutory, not contractual.
 

 Moreover, the proposed “clarification” of the breach of contract claim is similarly flawed. Costello claims that Gannett breached a contract by falling to review Costello’s medical condition in order to determine whether he was eligible for Long Term Disability based upon a physical impairment rather than mental illness.
 
 [4]
 
 Gannett had no such contractual obligation.
 

 Under the heading “Limitation of Benefits,” Gannett’s Long-Term Disability Plan handbook states:
 

 
 *318
 
 Benefits will be limited to 24 months if your disability is due to mental illness, alcoholism or drug addiction except in the case of hospitalization.
 

 Def.’s Statement of Facts, Ex. 33. The Plan provides for an employee’s right of review should a claim be denied, but nowhere does it state that Gannett will engage in the independent diagnosis of an employee in order to determine optimal Long-Term Disability benefits. A copy of the Plan handbook was sent to Costello by Gannett on July 15, 1988, along with the forms required for an employee to receive benefits. Def.’s Statement of Facts, Ex. 7.
 

 Thus, Costello was aware of the limitation on benefits for mental illness and knew of the procedures required of him to receive benefits. Indeed, after Costello learned that he had diabetes, there was a written exchange between him and Gannett as to how he could bring this physical impairment to the attention of the Plan administrators and extend the benefits past two years. Gannett twice informed Costello of the process to extend benefits, however, Costello, did not follow up on it. In fact, in a letter to Gannett’s Human Resources Director, Costello stated, “I think I made a mistake in not appealing for continued disability benefits from Gannett.” Def.’s Statement of Facts, Ex. 28.
 

 Accordingly, even if Costello had formally amended his complaint and properly pursued a claim for breach of contract based upon Gannett’s failure to place Costello on Long-Term Disability for a physical impairment, his claim would fail. The Plan does not place a contractual duty upon Gannett to make an independent determination of disability beyond that provided by Costello’s physician. Rather, the duty to apply for benefits falls upon the employee.
 

 Regarding the ADA claim, Gannett terminated Costello on November 30, 1990. The ADA did not become effective until July 26,1992. The ADA cannot be applied retroactively to this ease.
 
 See Miller v. CBC Cos., Inc.,
 
 908 F.Supp. 1054, 1060-64 (D.N.H.1995) (no clear directive from Congress indicating that the ADA may be applied retroactively);
 
 Powell v. New York,
 
 869 F.Supp. 106, 112-13 (N.D.N.Y.1994) (plaintiff could not recover on ADA claim because claim accrued upon elimination of employee’s position prior to ADA effective date; ADA will not apply retroactively).
 

 For the reasons stated above, the Court finds that Costello’s various breach of contract claims are substantively insufficient to survive a motion for summary judgment. Therefore, Gannett’s motion as to count two of the complaint is granted.
 

 III.
 
 Negligent Infliction of Emotional Distress
 

 Costello’s third claim for relief alleges negligent infliction of emotional distress. In the complaint, Costello asserts that Gannett, which should have been aware of Costello’s “weakened condition,” acted negligently when it cancelled Costello’s COBRA coverage. As a result of this negligence, he suffered stress and anxiety that impeded his full recovery.
 

 However, in his memorandum opposing summary judgment, Costello does not object to the dismissal of the negligent infliction of emotional distress claim.
 
 See
 
 Opp.Mem. to Def.’s Mot.Summ.J. at 1 n. 2. Because Costello has conceded this claim, the Court grants summary judgment in favor of Gannett.
 

 IV.
 
 Conclusion
 

 With the exception of the modifications articulated above, the Magistrate Judge’s Report and Recommendation (Paper # 24) is ADOPTED as the Opinion and Order of this Court. Therefore, Gannett’s Motion for Summary Judgment is GRANTED. CASE CLOSED.
 

 [1]
 

 . Although ultimately agreeing with Costello on this issue, the Court does not accept his overgeneralized claim that the issue of insanity can never be resolved on summary judgment.
 
 See Smith v. Smith,
 
 830 F.2d 11, 12-13 (2d Cir.1987) (on motion to dismiss, finding that plaintiff is not insane for purposes of tolling statute of limitations under New York law even though expert testimony established that plaintiff suffered post-traumatic stress disorder);
 
 Street v. Vose,
 
 936 F.2d 38, 40 (1st Cir.1991) (on court's
 
 sua sponte
 
 dismissal, finding inmate with many psychological problems did not show mental incapacity sufficient to toll statute of limitations under Massachusetts law),
 
 cert. denied,
 
 502 U.S. 1063, 112 S.Ct. 948, 117 L.Ed.2d 117 (1992).
 

 [2]
 

 . Illustration 9 to comment f is informative on this point:
 

 A, an eccentric and mentally deficient old maid, has the delusion that a pot of gold is buried in her back yard, and is always digging for it. Knowing this, B buries a pot with other contents in her yard, and when A digs it up causes her to be escorted in triumph to the city hall, where the pot is opened under circumstances of public humiliation to A. A suffers severe emotional disturbance and resulting illness. B is subject to liability to A for both.
 

 Burying a pot in a yard would not be outrageous but for B’s knowledge of A’s eccentricity.
 

 [3]
 

 . Although Costello never amended his complaint, he argues that it should be considered constructively amended because Gannett raised this issue in its motion for summary judgment.
 

 [4]
 

 . Gannett's Long Term Disability plan provided for two years of coverage in the case of mental disability. Coverage for physical impairment continues to retirement age.
 
 See
 
 Def.'s Statement of Facts, Ex. 33.