**Ernesto FORBES, Plaintiff,**

v.

**MERRILL LYNCH, FENNER & SMITH, INC. Yolanda D'Apuzzo and Anthony Dibiase, Defendants.**

**No. 96 Civ. 7461(CBM).**

United States District Court,
S.D. New York.

February 26, 1997.

Lee S. Nuwesra, New York City, for Ernesto Forbes.

A. Robert Pietrzak, Brown & Wood, New York City, for Merrill Lynch, Fenner & Smith, Inc., Yolanda D'Apuzzo, Anthony Dibiase.

## MEMORANDUM OPINION

MOTLEY, District Judge.

Plaintiff, a former employee of defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"), alleges that defendants have violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., and the New York Executive Law § 296. Plaintiff also claims that the defendants have committed the tort of intentional infliction of emotional distress. Defendants make this motion to dismiss count two (relating to the alleged violation of the New York Executive Law) and count three (relating to the tort of intentional infliction of emotional distress) of plaintiff's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons explored below, this motion is granted as to count two and denied as to count three.

## BACKGROUND

Plaintiff was hired as a mail clerk in the offices of defendant Merrill Lynch in November of 1986. In July of 1987, he was promoted to the position of processing clerk. Plaintiff alleges that from the time of his promotion until the end of 1992, he received favorable performance evaluations and was even promoted to the position of Lead Clerk as a result of his good performance. Plaintiff also claims that he had an outstanding working relationship with his supervisor, defendant Yolanda D'Apuzzo, during this time. However, plaintiff alleges that after he told defendant D'Apuzzo in the fall of 1992 that he had contracted the AIDS virus, her attitude toward him changed dramatically. Plaintiff claims that from that time forward, she screamed at him repeatedly in front of vendors and Merrill Lynch employees, sprayed Lysol in her office and on telephones used by plaintiff, and also requested the cleaning staff to use disinfectant when cleaning plaintiff's work area, none of which she had done prior to learning of plaintiff's disability.

Plaintiff also alleges that over the course of the next several months, defendant D'Apuzzo made repeated derogatory comments about homosexuals and people infected with the AIDS virus and that she asked other Merrill Lynch employees whether or not plaintiff was a homosexual. By March of 1993, plaintiff claims that he asked defendant Anthony DiBiase, defendant D'Apuzzo's supervisor, for a transfer. Though plaintiff claims that he was then told by defendant DiBiase that he would no longer have to report to defendant D'Apuzzo, defendant D'Apuzzo nonetheless placed plaintiff on a 90 day probation on April 20, 1993. In September of 1993, plaintiff was discharged.

Plaintiff thereafter filed an administrative complaint with the New York City Commission on Human Rights ("NYCCHR"), alleging that defendants had discriminated against him on the basis of his HIV-status in violation of the ADA and § 8–107.1(a) of the Administrative Code of the City of New York. Following an investigation, the NYCCHR dismissed the administrative complaint by Determination and Order dated February 23, 1995. The agency acknowledged that plaintiff had been repeatedly reprimanded and that defendant D'Apuzzo did occasionally address him in a raised voice, but it found that this treatment was due to plaintiff's own misconduct and did not stem from any discriminatory animus. After plaintiff sent a rebuttal letter to the NYCCHR and defendant responded, a Determination and Order after Review dated June 29, 1995 confirming the earlier decision was issued. A right to sue letter was then issued by the EEOC on August 7, 1996, and on October 1, 1996, this action was filed.

## ANALYSIS

### I. Standard Under Rule 12(b)(6)

A complaint should not be dismissed under Rule 12(b)(6) unless it appears beyond a doubt that plaintiff can prove no set of facts in support of his or her claim which would entitle him or her to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Moreover, when passing

on a motion to dismiss, the court must accept the allegations in the complaint as true and construe them in favor of the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972).

## II. Count Two (§ 296 of the New York Executive Law)

■ Defendants argue that plaintiff is collaterally estopped from filing suit under the New York Executive Law. Defendants maintain that the NYCCHR has already conducted an investigation and determined that there is no probable cause to believe that plaintiff's charges have any merit and that this court should give preclusive effect to the agency's factfinding.

■ "The doctrine of collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party ... whether or not the tribunals or causes of action are the same." *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1457 (2d Cir.1995) (citations omitted). Moreover, with certain exceptions [1], federal courts must give the same preclusive effect to state administrative proceedings that they would receive in state court. *Elliott*, 478 U.S. at 798–800, 106 S.Ct. at 3226; *Kirkland v. City of Peekskill*, 828 F.2d 104, 107 (2d Cir.1987); *DeCintio v. Westchester County Medical Center*, 821 F.2d 111, 117 (2d Cir.1987).

■ Under New York law, state administrative proceedings are given preclusive effect if two conditions are satisfied: (1) the issue must have been material to the first action and essential to the decision rendered therein, and (2) the first action must have genuinely provided the party against whom estoppel is asserted a full and fair opportunity to be heard. *Ryan v. New York Telephone Co.*, 62 N.Y.2d 494, 500–01, 467 N.E.2d 487, 490–91, 478 N.Y.S.2d 823, 826–27 (1984). Moreover, "the burden rests upon the proponent of collateral estoppel to demonstrate the identicality and decisiveness of the issue, while the burden rests upon the opponent to establish the absence of a full and fair opportunity to be heard." *Id.* at 501, 478 N.Y.S.2d 823, 467 N.E.2d 487. Each of the two conditions will be discussed separately.

### A. Identicality and Decisiveness of the Issue

In this case, there is no doubt that the issue litigated before the NYCCHR was identical to the one argued here and the decision rendered by the agency was decisive of that issue. Plaintiff's complaint before the NYCCHR alleged violations of the ADA and § 8–107 of the New York City Administrative Code, both of which make it unlawful to discharge from employment an individual because of his or her disability. 42 U.S.C. § 12112 (West 1995); N.Y.C.Admin.Code § 8–107 (1991). § 296(1)(a) of the New York Executive Law, which plaintiff raises before this court, deals with precisely the same issue.

Moreover, the agency decided this very issue in its February 23 Determination and Order, where it specifically found that plaintiff was disciplined and ultimately discharged not because of any discriminatory animus on the part of defendants, but because he had "committed several acts of misconduct and performed his job responsibilities poorly." *Forbes v. Merrill Lynch et al.* Determination and Order after Investigation, Complaint No. AE–94–0634 (Feb. 23, 1994). Thus, defendants have sustained their burden of demonstrating that the first requirement necessary to give an agency determination preclusive effect is present in this case, and the burden now shifts to plaintiff to demonstrate that the second requirement was not satisfied.

---

1. Federal courts do not give preclusive effect to state agency findings in federal causes of action when Congress has not intended such findings to have a preclusive effect. *University of Tennessee v. Elliott*, 478 U.S. 788, 798–800, 106 S.Ct. 3220, 3226, 92 L.Ed.2d 635 (1986) (state administrative proceedings do not have preclusive effect upon Title VII claims); *Solimino v. Astoria Feder-al Sav. & Loan Ass'n*, 901 F.2d 1148 (2d Cir. 1990) (no preclusive effect for claims raised under the Age Discrimination in Employment Act). The Second Circuit has not ruled about claims raised under the ADA (count one of this complaint), and this court need not consider the issue, since defendants have not sought to dismiss the first count of this complaint.

## B. Full and Fair Opportunity to be Heard

■ Plaintiff alleges that the investigation was grossly inadequate for a number of reasons. First, he claims that the agency failed to interview the Director of Human Resources, Mr. Nick Digirolamo, who allegedly overheard defendant D'Apuzzo screaming at plaintiff on the telephone. Plaintiff also claims that two other witnesses should have been interviewed, one of whom, Mr. Juan Cruz, was a vendor whom defendant D'Apuzzo allegedly questioned regarding plaintiff's sexual orientation, and the other of whom, Ms. Betsy Tostoy, was a Federal Express employee who allegedly overheard defendant D'Apuzzo screaming at plaintiff. Plaintiff further argues that the agency failed to make any inquiry into why plaintiff's performance evaluations described him as courteous while defendants maintained that he was confrontational. Finally, plaintiff objects to the fact that the Determination and Order is only three pages long and contains mostly boilerplate language along with a paragraph lifted *verbatim* from the defendant's papers. According to plaintiff, this demonstrates that no real findings of fact were made; instead, the agency only "parroted" conclusory allegations made by defendants.

Plaintiff has failed to show that he has been denied a full and fair opportunity to be heard. During its investigation, the NYCCHR interviewed a number of witnesses, reviewed numerous relevant documents, and gave plaintiff an opportunity both to rebut the defendants' answer to his complaint and to have his decision reviewed. Investigations such as the one conducted by the NYCCHR in the present case are routinely granted preclusive effect. *See, e.g., Kirkland,* 828 F.2d at 108–09 (agency findings given preclusive effect where its investigation received sworn statements of litigant, contacted a number of his witnesses, and received portions of depositions taken in connection with federal action); *Reubens v. New York City Dept. of Juvenile Justice,* 930 F.Supp. 887 (S.D.N.Y.1996) (plaintiff failed to meet burden of showing agency investigation was insufficient where agency interviewed witnesses and reviewed a large number of relevant documents).

Regarding plaintiff's specific objections, it is clear that none of these shows an absence of a full and fair opportunity to be heard. Two of the three witnesses plaintiff identifies as relevant which the agency did not interview were only being used to demonstrate that defendant D'Apuzzo screamed at plaintiff, a fact acknowledged by the agency. The issue to be decided is not whether defendant D'Apuzzo is a warm and congenial person, but rather whether her screaming was due to a discriminatory bias held by her against persons infected with the AIDS virus. Neither Mr. Digirolamo nor Ms. Tostoy could speak to that issue.

■ Furthermore, the court is puzzled by the allegation that the NYCCHR did not make a sufficient inquiry as to why plaintiff's evaluations were so different from the defendants' present description of him. The agency had before it the evaluations of plaintiff as well as the testimony of defendant, and it weighed the allegedly contradictory evidence and made its findings accordingly. "The issue of whether to consider a particular item of evidence and the weight to afford it [is] a matter committed in the first instance to the city agency.... It cannot be raised as a bar to collateral estoppel." *Reubens,* 930 F.Supp. at 892. The case of *Gregory v. New York State Human Rights Appeal Board et al.,* 64 A.D.2d 775, 407 N.Y.S.2d 256 (3d Dept.1978), cited by plaintiff, is inapposite. In that case, a plaintiff's allegedly favorable performance evaluations were inexplicably missing from his personnel file, and the investigator made no attempt to obtain them. This is much different from what transpired in this case, where the evaluations were obtained and reviewed by the NYCCHR, which then determined that they did not have the probative effect plaintiff believed them to have.

Equally puzzling is plaintiff's argument that the Determination and Order merely "parroted" defendants' conclusory allegations. While the Determination was by no means lengthy, it did succinctly review the facts of the case, reach a decision and state the grounds for reaching that decision. The

mere fact that the issues were not exhaustively examined hardly means that plaintiff has not been heard. Moreover, using language similar to that used by defendants is at best an indication that the agency believed defendant's version of the facts. It does not demonstrate an absence of a full and fair opportunity to be heard.

 Thus, plaintiff is able to point to only one witness, Mr. Juan Cruz, whose alleged testimony would have been relevant to the agency determination but whom the agency did not call. However, plaintiff had made the NYCCHR aware of those matters to which Mr. Cruz was expected to testify (namely, that defendant D'Apuzzo asked him about plaintiff's sexual orientation), and the NYCCHR decided that interviewing Mr. Cruz was not necessary. While Mr. Cruz was certainly a relevant witness, he was by no means so fundamental that a failure to interview him would result in the absence of a full and fair opportunity to be heard. An agency investigation need not be as formal or thorough as a trial in order for its determination to be given preclusive effect. *Kirkland,* 828 F.2d at 107–09 (holding that a full adjudicatory hearing with the ability to cross-examine witnesses is not necessary for the doctrine of collateral estoppel to apply); *Ibrahim v. New York State Dep't of Health,* 692 F.Supp. 1471, 1473 (E.D.N.Y.1988) (agency determination given preclusive effect where no hearing was held and a decision was reached on the basis of an incomplete record); *Reubens,* 930 F.Supp. at 891 ("[A]s long as the [agency] conducts a sufficiently thorough investigation and the complainant is given a full opportunity to present his charges against his employer, a determination of no probable cause ... is entitled to preclusive effect.")

Thus, for the foregoing reasons, defendants' motion is granted as to count two of the amended complaint.

### III. Count Three (Intentional Infliction of Emotional Distress)

Defendants move to dismiss the third count of the amended complaint for the intentional infliction of emotional distress on two grounds. First, defendants argue, plaintiff is barred under the statute of limitations. Secondly, defendants maintain that even assuming all of plaintiff's allegations to be true, plaintiff has failed to state a claim for the intentional infliction of emotional distress.

### A. Statute of Limitations

 "It is well established under New York law that a claim of intentional infliction of emotional distress has a one-year statute of limitations." *Lamb v. CitiBank, N.A.,* 1994 WL 497275 (S.D.N.Y.); *Brown v. Bronx Cross County Medical Group,* 834 F.Supp. 105 (S.D.N.Y.1993); *Anderson v. Yarp Restaurant, Inc.,* 1996 WL 271891 (S.D.N.Y.). The complaint in this case was not filed until October of 1996, though plaintiff was discharged in September of 1993. Thus, it is clear that more than one year has passed between the last act which could have been the basis for the claim of intentional infliction of emotional distress and the filing of the complaint.

However, the administrative complaint which was brought before the NYCCHR was filed with that agency and with the EEOC on February 4, 1993, and a right to sue letter was not procured from the EEOC until August 7, 1996. Plaintiff argues that during the time that his claim was pending with the EEOC, the statute of limitations was tolled for the intentional infliction of emotional distress, thereby rendering the claim timely filed.

There is a clear split of authority in this District on the question of whether filing a complaint with the EEOC tolls the statute of limitations for independent state law claims such as the intentional infliction of emotional distress. On the one hand, there are cases which hold that such claims are not tolled because they are separate and distinct from any discrimination claim, though based on the same set of facts. *Lamb,* 1994 WL at 497275, p. 8; *Hall v. USAir, Inc.,* 1996 WL 228458, p. 2 (E.D.N.Y.). Thus, for example, while a litigant is required to file a discrimination claim with the EEOC before raising a Title VII claim in federal court, 42 U.S.C. § 2000e–5(b) (West 1995), nothing prevents him or her from filing a claim for intentional

infliction of emotional distress in state court while resolution of the administrative claim is pending.

There are other cases, however, which hold that state law claims are tolled when a charge of discrimination based upon the same set of facts is filed with the EEOC. *See Brown*, 834 F.Supp. at 111; *Anderson*, 1996 WL 271891 at p. 2. These cases note that a litigant cannot in most cases bring a claim for intentional infliction of emotional distress in federal court until a federal claim is brought, since the court would not have subject matter jurisdiction to hear it. Thus, the result of holding that the statute of limitations was not tolled would be to require a litigant to bring an intentional infliction of emotional distress case in state court and later bring a federal, discrimination related claim in federal court, thereby forcing the litigant to argue two cases under two sovereigns with an identical set of facts. This would thwart the judicial efficiency encouraged by the grant of supplemental jurisdiction contained in 28 U.S.C. § 1367 and would also undermine one of the central purposes of Title VII, which is to allow the EEOC the opportunity to investigate allegations of employment discrimination in order to facilitate dispute resolution *before* litigation commences.

The court finds the reasoning of the latter cases to be more persuasive and accordingly holds that the statute of limitations was tolled from the time that a claim was filed with the EEOC until the time that the EEOC gave plaintiff a right-to-sue letter. Thus, the statute of limitations had not expired for the claim of intentional infliction of emotional distress.

## B. Extreme and Outrageous Conduct

In order to sustain a claim for intentional infliction of emotional distress, a litigant must establish four elements: (1) extreme and outrageous conduct on the part of defendants, (2) intent on the part of the defendant to cause, or disregard of a substantial probability of causing, severe emotional distress, (3) a causal connection between defendants' conduct and the injury suffered, and (4) severe emotional distress suffered by plaintiff. *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993); *Wolff v. City of New York Financial Services*, 939 F.Supp. 258 (S.D.N.Y.1996). Defendants argue that plaintiff has failed to allege conduct sufficient to satisfy the first element.

Defendants are correct in stating that in order to prevail on a claim of intentional infliction of emotional distress, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Wolff*, 939 F.Supp. at 263. Moreover, the Second Circuit has stated approvingly that New York courts have been very strict in applying this test. *Martin v. Citibank, N.A.*, 762 F.2d 212 (2d Cir.1985).

However, when reading the complaint generously and drawing all reasonable inferences in favor of the pleader, as this court is required to do when evaluating a 12(b)(6) motion to dismiss, see Sec. I *supra*, it is apparent that plaintiff has alleged sufficient conduct to survive a motion to dismiss.

Plaintiff alleges that he has been an able and diligent worker with a courteous demeanor who had an excellent working relationship with his supervisor until he disclosed to her that he was infected with the AIDS virus. At that point, plaintiff alleges that defendant humiliated him by screaming at him in public, made offensive comments about homosexuals and AIDS, inquired into plaintiff's sexual orientation, refused to meet with plaintiff in her office, and sprayed Lysol on telephones and desks used by plaintiff. Moreover, plaintiff alleges that all of these actions were taken without any justification other than the fact that plaintiff had contracted the AIDS virus. Such conduct, if indeed it occurred, amply satisfies the standard of extreme and outrageous conduct. *See, e.g., Polley v. Federal Reserve Bank of New York*, 1994 WL 465923 (S.D.N.Y.1994) (intentional infliction of emotional distress successfully pled where plaintiff alleged a long term pattern of race discrimination during which defendants gave her biased performance reviews, passed over her for promotions, gave her menial work, and berated

her); *Brown,* 834 F.Supp. at 111–12 (intentional infliction of emotional distress successfully pled where plaintiff alleged that supervisor refused to accommodate her domestic schedule though other similarly situated non-black employees were accommodated, subjected her to taunts and insults about her Jamaican heritage, refused to intervene when a coworker verbally abused her in front of a client, and ultimately discharged her).

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss count 2 of plaintiff's amended complaint is granted, and defendants' motion to dismiss count 3 is denied.