James NANCE

v.

**M.D. HEALTH PLAN, INC. and Michelle McNeil.**

No. 3:98CV221 JBA.

United States District Court, D. Connecticut.

March 31, 1999.

Ira B. Grudberg, Jacobs, Grudberg, Belt & Dow, P.C., New Haven, CT, Keith M. Krom, Maye & Krom, New Haven, CT, for James Nance, plaintiff.

John G. Zandy, Stephen B. Harris, Wiggin & Dana, Hartford, CT, for MD Health Plan, Inc, a subsidiary of Foundation Health Sys, Michelle McNeil, defendants.

## RULING ON DEFENDANT M.D. HEALTH'S PARTIAL MOTION TO DISMISS [DOC # 15]

ARTERTON, District Judge.

Plaintiff, James Nance, brings this case against defendants, M.D. Health Plan, Inc. ("M.D.Health") and its human resources manager, Michelle McNeil claiming violations of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, Conn. Gen.Stat. § 46a–60(a)(1) and common law claims of defamation, invasion of privacy, intentional infliction of emotional distress and negligent infliction of emotional distress.

Defendants have moved pursuant to Rule 12(b)(6) to dismiss Counts Six and Seven of the amended complaint for failure to state a claim upon which relief can be granted, [doc. 15], asserting the conduct alleged in Count Six for intentional infliction does not, as a matter of law constitute extreme and outrageous behavior; and that the facts alleged in support of Count Seven for negligent infliction of emotional distress do not arise within the termination process.

### Factual Background

Mr. Nance claims his termination was racially discriminatory and challenges many aspects of it including: 1) that an investigation of a sexual harassment complaint against him was initiated without his knowledge, 2) that it included interviews of his subordinates regarding his sexual orientation and private conduct outside work, 3) that only four of the eighteen members of his staff were interviewed, 4) that he was never informed of the investigation's results, and 5) that a similarly charged white employee was not terminated. Mr. Nance also challenges, as placing him in a false light, defendant's statement at his unemployment benefits hearing that he had been discharged for "conduct unbecoming of management" and for violation of M.D. Health's Code of Business.

Mr. Nance alleges that he was the sole African–American middle-management employee compensated at a lower salary level (Comp. at ¶ 14); that at the time of hiring he was assigned a lower salary level than his position had been budgeted for and that as a result of McNeil's actions he was the only middle manager to receive the lower salary level, based on his race (id. at ¶¶ 13–15); that he was the only member of the Senior Security Project not told of an important upcoming deadline and change in the meeting time thereby leaving him less time to prepare his portion of the project (id. at ¶¶ 18–20); that defendants improperly disclosed information about the nature of the investigation before notifying him of its existence (id. at ¶ 28); and that during the course of the investigation defendants inquired about his sexual orientation and social life outside work (Id. at ¶ 26). The allegations under investigation included claims that plaintiff had pinched a male employee's buttocks, had singled out that employee for discipline following rebuff of his advances, and showed preferential treatment to those male employees who socialized with him after work. (id. at ¶ 32, 25). On January 3, 1997, Mr. Nance was first informed by defendants of the allegations without details, sent home pending a full investigation and later that day informed by telephone that he had been terminated, (id. at ¶¶ 32–37) although unbeknownst to him, Mr. Nance's access to the computer network had been disconnected in the morning before he was notified of his termination; (Id. at ¶ 38).

### Standard of Review

M.D. Health moves to dismiss Counts Six and Seven on the grounds that the factual allegations contained in the Complaint would not entitle Mr. Nance to relief under Connecticut law, even under the generous standard applicable for motions to dismiss that requires this Court to take all facts alleged as true and draw all inferences in plaintiff's favor. *See Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994),

*cert. denied,* 513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994). "In determining the adequacy of a claim under Fed.R.Civ.P. 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir. 1991). Thus, it is inappropriate to grant a motion to dismiss a claim pursuant to Fed. R.Civ.P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The issue is not whether the Plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support his or her claims. *See Villager Pond, Inc. v. Darien,* 56 F.3d 375, 378 (2d Cir.1995).

## A. Intentional Infliction of Emotional Distress

■ To state a claim for intentional infliction of emotional distress, the plaintiff must allege: 1) that the actor intended to inflict emotional distress; or knew or should have known that emotional distress was the likely result of its conduct, 2) that the conduct was extreme and outrageous, 3) that the defendant's conduct was the cause of the plaintiff's distress, and 4) that the emotional distress sustained by the plaintiff was severe. *See Petyan v. Ellis,* 200 Conn. 243, 253, 510 A.2d 1337 (1986). Ordinarily, the disputed conduct must exceed all bounds tolerated by decent society, not be merely rude, tactless or insulting. *See Petyan,* 200 Conn. at 254, 510 A.2d 1337 (1986). "[A] line can be drawn between the slight hurts which are the price of a complex society and the severe mental disturbances inflicted by intentional actions wholly lacking in social utility." *Whelan v. Whelan,* 41 Conn.Supp. 519, 522, 588 A.2d 251 (1991).

M.D. Health claims that even if the Court accepts as true all of Nance's allegations and draws all reasonable inferences, such conduct cannot be considered extreme and outrageous. The conduct Nance urges as constituting extreme and outrageous conduct is: (1) classifying the plaintiff at a lower salary level than budgeted and lower than any manager, (2) failing to notify the plaintiff of an important project deadline leaving him with less preparation time than others; (3) disclosing the details of the sexual harassment allegations against him to a subordinate; (4) questioning the subordinate about the plaintiff's sexual orientation and private social activities; and (5) failing to notify him of charges against him prior to commencement of the investigation.

■ Under Connecticut law, it is for the court to make an initial determination of whether the alleged misconduct meets the threshold requirements of outrageousness. *See Troche v. Smith,* 1998 WL 516292 (Conn.Super.1998) (Silbert, J.) (noting "that despite the split among Superior Court judges, the better reasoned decisions are the more recent ones that provide for the court to make such a threshold determination" as a matter of law); *Ziobro v. Conn. Institute for the Blind,* 818 F.Supp. 497 (D.Conn.1993) (granting summary judgment where plaintiff failed to establish "extreme and outrageous conduct").

Mr. Nance contends that *Forbes v. Merrill Lynch,* 957 F.Supp. 450, 456 (S.D.N.Y. 1997), supports his contention that defendant's inquiry about his sexual orientation is sufficient to survive a motion to dismiss. In *Forbes,* the district court refused to dismiss plaintiff's claim for intentional infliction of emotional distress under New York law where the employer's conduct included among other things inquiry into the plaintiff's sexual orientation. However, Mr. Nance fails to recognize that additional egregious conduct was also alleged against defendant, including: screaming at plaintiff in public, making offensive com-

ments about homosexuals and AIDS, refusing to meet with plaintiff in her office, and spraying Lysol on telephones and desks used by plaintiff after learning plaintiff had AIDS. Moreover, it appears that Merrill Lynch's inquiry into Forbes' sexual orientation had no employment relatedness, whereas here the employer's questions were within the context of a same-sex sexual harassment investigation. Since *Forbes* did not single out the employer's sexual orientation inquiry as extreme and outrageous conduct per se, the Court finds *Forbes* distinguishable in light of the additional egregious conduct alleged. The additional conduct alleged by Nance does not rise to the level of extreme and outrageous.

Mr. Nance also contends that the denial of an employer's motion to dismiss in *Wilhelm v. Sunrise Northeast*, 1996 WL 737473 (Conn.Super.Dec.9, 1996), is instructive in that the plaintiff's claim for invasion of privacy was based on allegations of questioning plaintiff's sexual orientation and outside work relations in the course of investigating a patient assault complaint. "[W]hether such inquiries or interrogations, which undoubtedly concern private matters, are legitimate areas of inquiry for the purposes of producing relevant and material information as concerns the subject being investigated is a question of fact." *Id.* at *2. However, as M.D. Health correctly notes, *Wilhelm's* discussion of whether comparable conduct by an employer in the context of an invasion of privacy claims is irrelevant to the issue of whether such conduct is actionable as extreme and outrageous. Even assuming that defendants' questioning of Nance's subordinates about his sexual orientation bore no relation to the purpose of defendant's investigation, the Court must assess whether under any set of facts proved such questioning could constitute extreme and outrageous conduct.

 Even though Mr. Nance does not allege that he was personally subjected to any direct questioning, references or harassment about his sexual orientation or personal relationships, the Court cannot conclude that there is no set of facts that, if proved, would entitle him to relief. In an ideal working environment, the context, subject and manner of such questioning would not constitute extreme and outrageous conduct. However, the reality of continuing homophobia, discrimination and even fatal violence directed towards homosexuals precludes the conclusion at this preliminary stage that the motivation or circumstances of defendant's questioning does not constitute extreme and outrageous conduct. Many homosexuals take great care to conceal their sexual orientation from those with whom they work for fear of humiliation or actual physical risk if their homosexuality is disclosed. An employer's questioning that signals to others its belief that the subject employee is a homosexual in reckless disregard of a foreseeable, unsavory response by those persons thus informed, could constitute extreme and outrageous conduct. Whether this case represents any such circumstances awaits a more fully developed record and defendant's Motion to Dismiss Count Six is DENIED.

## B. Negligent Infliction of Emotional Distress

 In order to state a claim for negligent infliction of emotional distress, "the plaintiff has the burden of pleading that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm ... [N]egligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process ... The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." *Parsons v. United Technologies Corp.*, 243

Conn. 66, 88–89, 700 A.2d 655 (1997) (citations omitted).

M.D. Health contends that in the absence of any allegation that plaintiff's actual termination was carried out in an embarrassing or demeaning manner, particularly since Mr. Nance was sent home before termination without incident, that he fails to state a claim for negligent infliction of emotional distress. Mr. Nance does not complain of the manner of his actual notice of termination, but instead focuses on the termination process including the humiliating investigation.

In its reply brief, the M.D. Health asserts that plaintiff's claim essentially seeks to recover for the unrecognized tort of negligent investigation and that "to adopt the plaintiff's theory that the termination process should be broadly construed to include investigations leading up to the termination process would essentially result in a reversal of the Connecticut Supreme Court's express effort in *Parsons* to limit claims of negligent infliction of emotional distress in the employment context to cases in which the *actual termination* of an employee is carried out in an embarrassing or humiliating manner." (Reply Mem. at 5 (emphasis added)).

The Court is unable to determine from the Complaint when the "termination process" began, as the complaint alleges that plaintiff was sent home "pending defendants' full investigation" (¶ 34), and that his computer connections had earlier been disconnected (¶ 38). In light of the need for a fuller factual record, the Court cannot conclude at this preliminary stage that all defendants' investigative conduct occurred outside the termination process.

## Conclusion

For the foregoing reasons, Defendant's Partial Motion to Dismiss [doc. # 15] is DENIED.

IT IS SO ORDERED.