**Alfred J. MARIANI, Jr., Plaintiff,**

**v.**

**CONSOLIDATED EDISON COMPANY OF NEW YORK, INCORPORATED, John A. Arceri and Maria Logis, Defendants.**

**No. 96 Civ.5051(AGS)(AJP).**

United States District Court, S.D. New York.

Oct. 28, 1997.

Daniel H. Greenberg, New York City, for Plaintiff.

Mary Schuette, New York City, for Defendant.

## ORDER

SCHWARTZ, District Judge:

The Court, having received the Report and Recommendation ("Report") of United States Magistrate Judge Andrew J. Peck dated June 3, 1997, the objections filed by plaintiff dated October 8, 1997, and the response to the objections by defendants dated October 17, 1997, and having conducted a *de novo* review of the record, accepts and adopts the Magistrate Judge's Report. Accordingly, we adopt the Report's recommendation that summary judgment be granted in favor of defendants on plaintiff's claim for intentional infliction of emotional distress. The Clerk of the Court is directed to enter judgment accordingly and to close the file in this action.

SO ORDERED.

## REPORT AND RECOMMENDATION

PECK, United States Magistrate Judge:

To the Honorable Allen G. Schwartz,
United States District Judge:

Alfred Mariani, a managerial level Con Ed employee who was shunted aside in a corporate reorganization, allegedly harassed and demeaned, and eventually fired, has sued Con Ed and two of his superiors for intentional infliction of emotional distress. Defendants have moved for summary judgment. For the reasons set forth below, the Court recommends that defendants' summary judgment motion be granted because (1) Mariani's claim is barred by the one–year statute of limitations, and (2) even if not time barred, defendants' alleged conduct is not sufficiently outrageous to meet New York's stringent requirements for a claim of intentional infliction of emotional distress in the employment setting.

### FACTS

*Introductory Remarks*

Southern District of New York Local Civil Rule 56.1 (formerly Local Rule 3(g)), provides:

**Local Civil Rule 56.1. Statements of Material Facts on Motion fox Summary Judgment**

(a) Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion.

(b) The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried.

(c) All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

(d) Each statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e).[1]

Plaintiff Mariani's counter 3(g) statement, however, does not provide the Court with citations to evidentiary support. The Court is still able to rule on the motion, by assuming that there is evidentiary support for the statements in Mariani's 3(g) and in his amended complaint (hereafter, the "complaint" or "Cplt."). The Court can do so because even on those facts, Mariani has not stated a viable claim for intentional infliction of emotional distress. The factual recitation that follows, therefore, is largely derived from Mariani's 3(g) and his complaint.[2]

*The Parties*

Defendant Consolidated Edison Company of New York ("Con Ed") is a corporation engaged in the business of supplying electric, gas and steam service to New York City and Westchester County. (Con Ed 3(g) ¶¶ 1–2; Cplt. ¶ 4.) Plaintiff Alfred J. Mariani Jr. first became employed by Con Ed in 1972 in a union position. (Con Ed 3(g) ¶ 7; Cplt. ¶¶ 10, 24.) In 1984, Mariani left Con Ed to pursue other opportunities. (Con Ed 3(g) ¶ 8; Cplt. ¶ 16.).

In early 1986, Mariani returned to Con Ed in a management position. (Con Ed 3(g) ¶ 9; Cplt. ¶ 19; Mariani Dep. at 76.) This was not a union position, nor did Mariani have an individual employment contract with Con Ed. (Con Ed 3(g) ¶¶ 9, 10; Mariani Dep. at 77.) From 1986–89, Mariani received a number of promotions, culminating in his becoming Manager of Management Development in Con Ed's in-house management education and training division. (Mariani 3(g) ¶ 2;[3] Con Ed 3(g) ¶¶ 11–12; Mariani Dep. at 121–34, 152; Cplt. ¶¶ 31–37.) Mariani received several excellent reviews regarding his performance as Manager of Management Development. (Mariani 3(g) ¶ 5.)

*Con Ed Establishes the Learning Center and Replaces Mariani*

Con Ed decided to consolidate training functions in a state–of–the–art facility to be called the "Learning Center." (See Cplt. ¶ 41; Logis Aff. ¶¶ 6, 7.) In early 1992, Mariani was informed by his supervisor, Joanna M. Wolf, that (i) defendant Maria Logis would be named General Manager of this division, (ii) Logis planned to replace Mariani with Dorothy Hertle, and (iii) Mariani should begin to look for another position within Con Ed. (Mariani 3(g) ¶ 6; Cplt. ¶ 41.)

Mariani applied and interviewed for the position of Manager of Managerial Education, the equivalent of his former position,

---

1. The Court notes that Local Civil Rule 3(g), which was in effect when the parties filed and responded to the summary judgment motion, did not contain the equivalent sub–paragraph to Rule 56.1(d). However, that requirement was contained in Judge Schwartz's chambers rules (Rule IV.A.).

2. The Court will not precede statements with the phrase "Mariani alleges," and the Court's recitation of the "facts" should not be taken as a judicial finding that what Mariani alleges occurred did in fact occur.

3. Citations to paragraph numbers for the Mariani 3(g) are to the paragraphs in part II of his 3(g).

but he did not get the position; Hertle did. (Mariani 3(g) ¶ 7; Cplt. ¶ 43.) Mariani was not given any other position in the Learning Center. (Logis Aff. ¶ 16.) On September 21, 1992, Logis issued a memorandum announcing those selected to work at the Learning Center and listing the current staff that had not been selected, including Mariani. (Mariani 3(g) ¶ 9 & Ex. 4; Logis Aff. ¶ 16.) This memorandum caused Mariani great emotional distress. (Mariani 3(g) ¶ 10; Cplt. ¶ 45.)

### Mariani As a "Surplus" and "On Loan" Employee

Mariani was placed on "surplus" status. (Mariani 3(g) ¶ 11; Cplt. ¶ 48.) While on "surplus" status, Mariani had no "specific or fixed assignment, job title or duties commensurate with his managerial experience and expertise, and his position as a Level Three Midpoint Manager, ... [was] sometimes without any work to do, and always in jeopardy of being terminated." (Mariani 3(g) ¶ 12.) Mariani was transferred from his office to a small windowless room without a telephone, and forced by Logis to teach Hertle about her new position. (Mariani 3(g) ¶ 14.) Logis instructed Mariani to accept a position with Con Ed in Staten Island, which Mariani refused due to the lengthy commute, and she repeatedly told Mariani that unless he found another Con Ed position, he would be downgraded or terminated. (Cplt. ¶ 49.) Mariani was unable successfully to find another position within Con Ed, due to Logis's influence or her failure to consent to transfers. (E.g., Mariani 3(g) ¶¶ 15, 19–21.)

In January 1993, Mariani taught a course entitled "Integrated Application Management" to twenty project managers at the Indian Point Nuclear facility, with such great success that an article was written about it in the Con Ed monthly publication. (Mariani 3(g) ¶¶ 17, 18.) While the draft of the article reviewed by Mariani mentioned his name prominently, the published version contained no mention of him. (Mariani 3(g) ¶ 18.) This caused Mariani "humiliation, embarrassment and shame." (Id.)

In January 1994, Mariani received an "on-loan" assignment [4] in the Gas Marketing department under the supervision of defendant John A. Arceri. (Mariani 3(g) ¶ 23; Cplt. ¶ 54; Con Ed 3(g) ¶ 13.) Mariani was given work projects that were below his level of expertise. (Mariani 3(g) ¶ 23.) "Whenever [Mariani] would inquire of Mr. Arceri as to when he would be 'budgeted,' Mr. Arceri would respond by telling [Mariani] that he was 'a pain in the ass'; that he would call [Mariani]'s brother Richard, who was manager of Energy Services in Bronx County, telling him to tell plaintiff to stop bothering him, otherwise he would send plaintiff for a 'job fitness evaluation', a procedure used as a form of punitive threat, which consisted of testing for drugs and alcohol abuse and psychological testing, as a prelude to disciplinary proceedings and termination if the employee compelled to undergo such testing should display any negative results of the evaluation process." (Mariani 3(g) ¶ 23.) These threats caused Mariani serious emotional distress. (Id.) "[D]uring this period various plans for reorganization of Arceri's department were discussed, whereupon defendant Arceri would often say to plaintiff that he would be required to justify his retention in the proposed reorganized department, and to justify why he should not be terminated." (Mariani 3(g) ¶ 24.) These statements also greatly distressed Mariani. (Id.) During this time, Mariani received a minimal raise, rather than the larger raise he felt he deserved, due to Logis' intervention. (Cpt. ¶ 57.)

In late 1994, Wolf, acting as Mariani's supervisor, signed a Payroll Change Authorization transferring Mariani from Logis organization, where he had not actually worked since 1992, to Arceri's organization. (Mariani 3(g) ¶ 25.) While the transfer was to take effect on January 1, 1995, Arceri did not implement it until July 1995. (Id.) During this seven month lag, Mariani remained a "surplus" management employee and continued to be harassed. (Id.)

### Mariani's Medical Leave and Termination

In mid–September 1995, Mariani took a medical leave of absence for approximately

---

4. To be "on–loan" apparently means to occupy a position that is not "budgeted." Apparently, un- budgeted positions are not desirable because continued employment is uncertain.

one month, during which time he consulted Dr. David M. Ross, a psychiatrist, who determined that Mariani "was suffering from severe panic attacks, depression and anxiety, as well as various medical illnesses diagnosed by other physicians, resulting" from the distress caused by his employment situation. (Mariani 3(g) ¶ 26.)

In January 1996, Arceri assigned Mariani as the Sales Support Manager for the Westchester Division of Energy Services Department, working under Laurence Kleinman's supervision. (Cplt. ¶ 69; Mariani 3(g) ¶ 28.) Mariani informed Kleinman of his medical condition, "with particular reference to his chronic fatigue, requiring flexibility in [Mariani]'s scheduling." (Cplt.¶ 69.) With Arceri's encouragement, Kleinman harassed Mariani with respect to his working hours, "culminating in [Mariani] being berated for missing a night meeting in Queens County, even though [Mariani] had reported ill the day before the scheduled meeting.... " (Cplt. ¶ 70; see also Mariani 3(g) ¶ 29.)

On March 6, 1996, Mariani "was placed on medical leave by defendant Con Ed's Occupational Health Department by reason of a 'serious health condition that makes (him) unable to perform the essential functions of [his] job ...'" (Cplt. ¶ 71; see also Mariani 3(g) ¶ 29.) During May 1996, Mariani was ordered to report to Con Ed's medical department for psychiatric examinations. (Cplt. ¶ 73; Mariani 3(g) ¶ 30; Con Ed 3(g) ¶ 16.)

On June 7, 1996, Mariani reported to the medical department as ordered and was informed by Gregory Pagano, a social worker, that he was no longer ill and was to report back to work. (Cplt. ¶ 74; Mariani 3(g) ¶ 31.) On June 14, 1996, Mariani "was purportedly informed by defendant Con Ed that he had been approved to return to work on June 10, 1996, but that he had not returned, thereby being advised that unless he returned to work on June 21, 1996, his 'employment would be terminated'." (Cplt.¶ 75.) "On or about June 20, 1996, defendant Con Ed informed plaintiff in writing that he was not medically qualified for leave pursuant to the provisions of the Family and Medical Leave Act of 1993." (Cplt.¶ 76.)

In a letter dated June 18, 1996, Dr. Barton Belkin, Mariani's internist, informed Dr. Dara Richardson, Con Ed's medical director, that Mariani "'presently is suffering from rectal bleeding and recurrent abdominal pain'; that plaintiff was being referred to a gastroenterologist for further evaluation and treatmernt." (Cplt.¶ 77.) In a letter dated June 19, 1996, Dr. David M. Ross, Mariani's psychiatrist, informed Con Ed's Dr. Richardson that Mariani "continues in treatment with him; that he is suffering from major depression and panic disorder; that he is in treatment with Dr. Barton Belkin for hypothyroidism, irritable bowel syndrome, rectal bleeding and severe abdominal cramping; that plaintiff was making progress toward recovery and would probably have been able to return to work, with some restrictions in four to six weeks; that however recent attempts to try to force him to return to work prematurely has caused a severe set back in his emotional and physical well-being; that Dr. Ross has been forced to increase plaintiff's medication drastically, just to contain his symptoms." (Cplt.¶ 78.)

Nevertheless, Mariani reported to work on June 21, 1996. (Mariani 3(g) ¶ 32; Cplt. ¶ 79.) Upon Mariani's arrival, Arceri and Kleinman berated him causing Mariani to have a "panic attack." (Mariani 3(g) ¶ 32.)

On July 3, 1996, Mariani filed this action. (Cplt. ¶ 82; Con Ed 3(g) ¶ 17.).

By letter dated July 1.9, 1996, Dr. Luis Ramirez, an internist and endocrinologist, informed Con Ed's Dr. Richardson that Mariani had Hashimoto's disease and hypothyroidism and that Mariani was medically disabled and should not continue to work. (Cplt.¶¶ 83–84.)

On July 25, 1996, Mariani again appeared before Con Ed's medical department. (Cplt.¶ 85.) After being questioned by a psychiatrist, a social worker, and a physician, Mariani was informed that he was to report to work the next day. (Cplt. ¶ 85; Con Ed 3(g) ¶ 18.) Mariani did not report to work the following day, and Con Ed discharged him. (Cplt. ¶ 86; Mariani 3(g) ¶ 34; Con Ed 3(g) ¶¶ 19, 20.) Mariani terms this the culmination of "a contrived conspiratorial plan to

fire [Mariani] by ordering him to work when they knew he was too ill to comply." (Mariani 3(g) ¶ 33.)

## ANALYSIS

## I. APPLICABLE LEGAL STANDARDS

### A. Summary Judgment Standards

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); Lang v. Retirement Living Pub. Co., 949 F.2d 576, 580 (2d Cir.1991); Hernandez v. New York City Law Dept. Corp. Counsel, 94 Civ. 9042, 1997 WL 27047 at *6 (S.D.N.Y. Jan.23, 1997) (Peck, M.J.); Burger v. Litton Industries, Inc., 91 Civ. 0918, 1996 WL 421449 at *7 (S.D.N.Y. April 25, 1996) (Peck, M.J.), report & rec. adopted by 1996 WL 609421 (S.D.N.Y. Oct.22, 1996). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment, here, defendants. See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 36 (2d Cir.1994); Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1223 (2d Cir.1994); Hernandez v. New York City Law Dept. Corp. Counsel, 94 Civ. 9042, 1997 WL 27047 at *6; Burger v. Litton, 91 Civ. 0918, 1996 WL 421449 at *7.

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [his] favor." Anderson v. Liberty Lobby, 477 U.S. at 255, 106 S.Ct. at 2513; see also, e.g., Chambers v. TRM, 43 F.3d at 36; Gallo v. Prudential, 22 F.3d at 1223; Hernandez v. New York City Law Dept. Corp. Counsel, 94 Civ. 9042, 1997 WL 27047 at *6. The Court draws all inferences in favor of the nonmoving party—here, plaintiff Mariani—only after determining that such inferences are reasonable, considering all the evidence presented. See, e.g., Apex Oil Co. v. DiMauro, 822 F.2d 246, 252 (2d Cir.), cert. denied, 484 U.S. 977, 108 S.Ct. 489, 98 L.Ed 2d 487 (1987); Hernandez v. New York City Law Dep't Corp. Counsel, 1997 WL 27047 at *6; Burger v. Litton, 1996 WL 421449 at *7. "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Chambers v. TRM, 43 F.3d at 37; see also Hernandez v. New York City Law Dept. Corp. Counsel, 94 Civ. 9042, 1997 WL 27047 at *6.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine the existence of any disputed issues of material fact. See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir.1987); Knight v. United States Fire Ins. Co., 804 F.2d 9, 11 (2d Cir.1986), cert. denied, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); Ruiz v. Selsky, 96 Civ. 2003, 1997 WL 137448 at *3 (S.D.N.Y. March 24, 1997) (Peck, M.J.) To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant. Anderson v. Liberty Lobby, 477 U.S. at 248, 106 S.Ct. at 2510. While "disputes over facts that might affect the outcome of a suit under the governing law will properly preclude the entry of summary judgment [,][f]actual disputes that are irrelevant or unnecessary will not be counted." Id. (citations omitted); see also, e.g., Knight, 804 F.2d at 11–12; Shaw v. City of New York, 1997 WL 187352 at *2 (S.D.N.Y. April 15, 1997) (Peck, M.J.); Ruiz v. Selsky, 96 Civ. 2003, 1997 WL 137448 at *3.

### B. Standards for an Intentional Infliction of Emotional Distress Claim

The standard in New York for a claim for intentional infliction of emotional distress is well established:

The New York courts have adopted the rule set out in the Restatement that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress ..." Comment d to [the Restatement (Second) of Torts § 46] provides that "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable."...

Defendants' conduct "must consist of more that mere insults, indignities and annoyances and must be so shocking and outrageous as to exceed all reasonable bounds of decency."

*Bradley v. Consolidated Edison Co. of New York, Inc.,* 657 F.Supp. 197, 205 (S.D.N.Y. 1987) (citing New York cases); *see also, e.g., Spence v. Maryland Cas. Co.,* 995 F.2d 1147, 1158 (2d Cir.1993); *Martin v. Citibank, N.A.,* 762 F.2d 212, 220 (2d Cir.1985); *Bonner v. Guccione,* 916 F.Supp. 271, 276 (S.D.N.Y. 1996); *Neufeld v. Neufeld,* 910 F.Supp. 977, 984 (S.D.N.Y.1996); *Koster v. Chase Manhattan Bank, N.A.,* 609 F.Supp. 1191, 1197–98 (S.D.N.Y.1985).

### C. Statute of Limitations Standards for an Intentional Infliction of Emotion Distress Claim

■ It is well established that the one-year statute of limitations set forth in CPLR § 215(3) for intentional torts is applicable to claims for intentional infliction of emotional distress. *See, e.g., Forbes v. Merrill Lynch, Fenner & Smith, Inc.,* 957 F.Supp. 450, 455 (S.D.N.Y.1997) (" 'It is well established under New York law that a claim of intentional infliction of emotional distress has a one-year statute of limitations.' "); *Santan–Morris v. New York University Medical Center,* 96 Civ. 0621, 1996 WL 709577 at *2 (S.D.N.Y. Dec.10, 1996); *Neufeld v. Neufeld,* 910 F.Supp. at 981; *Ornstein v. Pakistan Int'l Airlines Corp.,* 888 F.Supp. 28, 31 n. 11 (S.D.N.Y.1995); *Rosado v. City of New York,* 713 F.Supp. 124, 125 n. 2 (S.D.N.Y.1989); *Koster v. Chase Manhattan Bank,* 609 F.Supp. at 1198.

■ When applying the one year statute of limitations to claims of intentional infliction of emotional distress," ' [a]ll acts occurring before the limitations period are excluded from consideration.' " *Santan–Morris v. New York University Medical Center,* 96 Civ. 0621, 1996 WL 709577 at *2 (quoting *Koster v. Chase Manhattan Bank,* 609 F.Supp. at 1198); *see also, e.g., Weisman v. Weisman,* 108 A.D.2d 853, 854, 485 N.Y.S.2d 570, 571 (2d Dep't 1985)

New York courts have been reluctant to apply a "continuing wrong" theory to include acts that took place outside of the statute of limitations in intentional infliction of emotional distress claims:

"A cause of action for intentional infliction of emotional distress is limited to conduct that occurred within the one–year period immediately preceding the commencement of the action. To hold otherwise would subject defendants to never–ending liability for such claims, which could at any time be triggered by non–extreme, non–outrageous, and non–tortious acts. Merely alleging that such non–actionable conduct was an extension of actionable conduct would resurrect stale time–barred conduct."

*Santan–Morris v. New York University Medical Center,* 96 Civ. 0621, 1996 WL 709577 at *4 (quoting *Foley v. Mobil Chem. Co.,* 214 A.D.2d 1003, 1004, 626 N.Y.S.2d 906, 907 (4th Dep't 1995)).

■ Nevertheless, some New York courts, in certain circumstances, have applied the continuing wrong doctrine to a claim for intentional infliction of emotional distress, thereby allowing the claim to go forward based on all of the actions that make up the course of conduct, including those outside of the statute of limitations. *See, e.g., Santan–Morris v. New York University Medical Center,* 96 Civ. 0621, 1996 WL 709577 at *4; *Drury v. Tucker,* 210 A.D.2d 891, 892, 621 N.Y.S.2d 822, 823 (4th Dep't 1994). However, "for the statute of limitations to be tolled under the theory of continuing wrongs, the acts within the statute of limitations must be sufficient to make out a claim for intentional infliction of emotional distress, 'independent

of those acts that are part of the offending course of conduct but fall outside the time bar.'" *Santan–Morris v. New York University Medical Center*, 1996 WL 709577 at *5; *see also, e.g., Neufeld v. Neufeld*, 910 F.Supp. at 983 ("because under the general doctrine of continuing torts a continuing harm tolls the statute of limitations only until the offending action ceases, ... the court must review those acts falling within the statute of limitations to determine if they—independent of those acts that are a part of the offending course of conduct but fall outside the time bar—are sufficient to make out a claim for [intentional infliction of emotional distress]; if they are not, then the offending action would have ceased prior to the statute of limitations period and the action would be barred as untimely."); *Bonner v. Guccione*, 916 F.Supp. 271, 277 (S.D.N.Y.1996) ("the conduct that falls within the limitations period must be in and of itself actionable conduct").

This case was brought on July 3, 1996. Therefore, for Mariani's action to survive defendants' summary judgment motion, there must be evidence of actions taken by the defendants on or after July 3, 1995 that are sufficient on their own to state a claim for intentional infliction of emotional distress.

## II. MARIANI'S CLAIMS AGAINST DEFENDANTS ARE TIME BARRED AND/OR DO NOT STATE AN INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

### A. Claims Based on Conduct Within the One–Year Limitation Period

#### 1. Maria Logis

Mariani has not alleged any conduct by defendant Maria Logis on or after July 3, 1995, let alone any conduct sufficient to establish an intentional infliction of emotional distress claim against Logis. Therefore, Mariani's claims against Logis should be dismissed as time barred.

#### 2. John A. Arceri

■ The conduct alleged against defendant John Arceri that took plate on or after July 3, 1995 consists of the following: (1) Arceri failed to implement Mariani's transfer to his department for much of the month of July 1995. leaving Mariani as a "surplus" employee for that month and harassing him during this time; (2) Arceri assigned work projects to Mariani that were not appropriate for one of Mariani's experience; (3) with knowledge of Mariani's psychiatric problems, Arceri and Kleinman berated Mariani on June 21, 1996, causing Mariani to suffer a panic attack; and (4) Arceri encouraged Kleinman's harassment of Mariani. As discussed in Point II.B, this conduct is not "so outrageous in character, and so extreme in degree" as to support an intentional infliction of emotional distress claim. Since sufficiently outrageous conduct is not alleged to have taken place within the statute of limitations period, the statute may not be "tolled" and the Court cannot look at Arceri's conduct before July 3, 1995. Mariani's claim against Arceri should be dismissed as time barred.

#### 3. Con Ed

The conduct alleged against Con Ed that took place on or after July 3, 1995 includes: (1) Arceri's conduct discussed above; (2) Kleinman's harassment and berating of Mariani; and (3) threats of termination should Mariani fail to return to work, despite reports from Mariani's internist and psychiatrist that Mariani was unable to work and insufficient independent medical reviews of Mariani's condition to enable Con Ed in good faith to disagree with the reports of Mariani's doctors.[5] As discussed further in Point

---

5. The Court does not consider the portion of Con Ed's conduct that took place after the filing of plaintiff's original complaint, including Mariani's discharge, because, in an attempt to avoid an application of the at–will employment doctrine, plaintiff explains that he has supplied the Court with this information merely "to complete the story" and is to July 3, 1995, defendants acts would consist of the post July 3, 1995 conduct detailed above plus the following: Con Ed's failure to select Mariani to be part of the new Learning Center and the circulation of a memo announcing that Mariani (and others) were not chosen to be a part of the Learning Center; the maintenance of Mariani on "surplus" status for an extended period of time and the not seeking damages based upon these actions. (Mariani Br. at 18.) Even if those facts were to be considered, however, the Court is skeptical of plaintiff's ability to bring this intentional infliction of emotional

II.B, this conduct is not "so outrageous in character, and so extreme in degree" so as to establish an intentional infliction of emotional distress claim. Therefore, the statute of limitations is not "tolled" and Mariani's claim against Con Ed should be dismissed as time barred.

### B. Even if the Court Were to Consider Acts That Took Place Prior to July 3, 1995, and Accept Mariani's Factual Allegations as True, the Acts Do Not Support a Claim for Intentional Infliction of Emotional Distress

If the Court were to consider conduct taking place prior frustration of his attempts to find a "budgeted" position; Mariani's transfer to a small windowless office without a telephone; the assignment of work to Mariani that was not suitable for someone of his experience; and the removal of Mariani's name in the company newsletter from an article about a course Mariani taught.

■ Under New York law, as a corollary of the employment–at–will doctrine which gives employers the right to fire an at–will employee at any time, tort claims for wrongful discharge are unavailable to at–will employees. *Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 300–01, 461 N.Y.S.2d 232, 235–36, 448 N.E.2d 86 (1983); *accord, e.g., Spence v. Maryland Cas. Co.,* 995 F.2d 1147, 1158 (2d Cir.1993); *Shamley v. ITT Corp.,* 869 F.2d 167, 171 (2d Cir.1989).

New York courts are exceedingly wary of claims for intentional infliction of emotional distress in the employment context because of their reluctance to allow plaintiffs to avoid the consequences of the employment–at–will doctrine by bringing a wrongful discharge claim under a different name. *Murphy v. American Home Prods.,* 58 N.Y.2d at 303,

461 N.Y.S.2d at 236, 448 N.E.2d 86; *see also, e.g., Spence v. Maryland Cas. Co.,* 995 F.2d at 1158; *Gerzog v. London Fog Corp.,* 907 F.Supp. 590, 604 (E.D.N.Y.1995); *Blatman v. Paribas North America, Inc.,* 198 A.D.2d 172, 172, 604 N.Y.S.2d 70, 71 (1st Dep't 1993) ("The seventh cause of action was properly dismissed as an improper attempt by the plaintiff to evade the rule that there is no cause of action in New York for abusive and wrongful discharge by casting that cause of action in terms of a tort or intentional infliction of emotional distress"); *Brooks v. Blue Cross of Northeastern New York, Inc.,* 190 A.D.2d 894, 895, 593 N.Y.S.2d 119, 120 (3d Dep't 1993) (complained of acts including harassment, intimidation and threats of firing "are too closely related to the wrongful termination alleged to stand as a distinct cause of action" for intentional infliction of emotional distress).

"In fact, the New York Court of Appeals and three of the four departments of the Appellate Division have *never* sustained a claim of intentional infliction of emotional distress in an employment case," and the remaining department, "the First Department of the Appellate Division[,] has on only two occasions of which we are aware permitted plaintiffs to proceed with intentional infliction tort claims against their employers. *See, Kaminski v. United Parcel Service,* 120 A.D.2d 409, 501 N.Y.S.2d 871 (1st Dep't 1986), and *Elson v. Consolidated Edison Co. of New York,* 226 A.D.2d 288, 641 N.Y.S.2d 294 (1st Dep't 1996)." (Con Ed Br. at 24–25; *see also,* Mariani Br. at 9 ("the New York Court of Appeals has never sustained an action alleging intentional infliction of emotional distress ... [instead] holding all allegations and complaints charging this tort to be legally insufficient.").) [6]  *See Gerzog v.*

---

distress claim in the face of the at–will employment doctrine, discussed in text in Point II.B below. *See, e.g., Brooks v. Blue Cross of Northeastern New York, Inc.,* 190 A.D.2d 894, 895, 593 N.Y.S.2d 119, 120 (3d Dep't 1993) ("While plaintiff argues that his case can be distinguished because it involves 'the repeated, systematic, vindictive, and unjustified pattern' of attacks on his professional competence, we conclude that the alleged acts of defendant are too closely related to the wrongful termination alleged to stand as a distinct cause of action").

6. The Court's independent research revealed one other Appellate Division case in which a motion to dismiss a claim against plaintiff's employer was denied, as well as a New York Supreme Court case denying a motion for summary judgment. *See O'Reilly v. Executone of Albany, Inc.,* 121 A.D.2d 772, 774, 503 N.Y.S.2d 185, 186 (3d Dep't 1986); *Collins v. Willcox, Inc.,* 158 Misc.2d 54, 56–57, 600 N.Y.S.2d 884, 885–886 (Sup.Ct N.Y.1992). However, both of these cases concern sexual harassment involving battery and are therefore distinguishable from the present case.

*London Fog*, 907 F.Supp. at 604 ("In 1993, the New York Court of Appeals noted that ... every claim for intentional infliction of emotional distress that the court reviewed failed because the conduct alleged was not sufficiently outrageous.") (citing *Howell v. New York Post Co.*, 81 N.Y.2d 115, 122, 596 N.Y.S.2d 350, 353, 612 N.E.2d 699 (1993)).

Both *Elson* and *Kaminski* are clearly distinguishable. In *Elson*, defendants' summary judgment motion was denied where

See *Gerzog v. London Fog*, 907 F.Supp. at 604 (distinguishing *O'Reilly* and *Collins* on the basis that "[i]n the rare instances where the New York courts have found the complaint sufficient to state a claim for intentional infliction of emotional distress in the employment context, the claims have been accompanied by allegations of sex discrimination, and more significantly, battery."). *Rivera v. Prudential Ins. Co. of America*, 1996 WL 637555 (N.D.N.Y. Oct.21, 1996), is distinguishable on the same basis.

The Court's independent research also uncovered four federal cases that allowed claims against a plaintiff's employer for intentional infliction of emotional distress to go forward. While the full facts in *Hughes v. Patrolmen's Benevolent Assoc. of the City of New York*, 850 F.2d 876 (2d Cir. 1988), *cert. denied*, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988), are unclear, it involved a malicious vendetta against the plaintiff by other police officers which included an attempt to frame him for the death of another officer. The conduct in Hughes is clearly more egregious than Con Ed's.

In *Polley v. Federal Reserve Bank of New York*, 92 Civ. 7114, 1994 WL 465923 at *1–4, *7 (S.D.N.Y. Aug.23, 1994), the Court denied the employer's summary judgment motion on an intentional infliction of emotional distress claim brought by a minority plaintiff against her former employer, based upon a pattern of harassment, unjust criticism of her work, assignments that were unsuitable for one of her experience and smaller merit raises and less frequent promotions for plaintiff than her nonminority counterparts. The Court's only analysis was that since "New York courts have found that sexual harassment claims based on a pattern of harassment may give rise to intentional infliction of emotional distress claims by virtue of being intolerable conduct ... [i]t is entirely possible that a jury may find that the alleged racial discrimination is conduct so far beyond the bounds of decency as to support a claim of intentional infliction of emotional distress as well." *Id.* at *7. In *Zaffino v. Surles*, 91 Civ. 1637, 1995 WL 146207 (S.D.N.Y. March 31, 1995), the Court denied summary judgment where "[p]laintiff's version of the facts is that defendants caused him to be locked out of his office, shunted to a filthy, cluttered storage room, stripped of all executive responsibilities, relegated to menial tasks, deprived of elevator keys and

[p]laintiff, who had an underlying psychological condition which was known to the defendant employer and for which plaintiff was receiving treatment ... [was] subjected to eight hours of threatening interrogation by the individual defendants, security officers of defendant Con Edison, who were investigating drug use at one of the utility's facilities, during which interrogation plaintiff was repeatedly shown a gun, not allowed to call a lawyer, denied lunch,

mail keys, deprived of a parking spot adjacent to the facility, removed from executive meetings and required to report to a person in a subordinate civil service rank." *Id.* at * 5. The facts in *Zaffino* are more egregious than the instant case. In any event, the decisions in both *Polley* and *Zaffino* contain minimal analysis and support for their holdings and are not persuasive. They also are inconsistent with the vast bulk of New York state and federal intentional infliction of emotional distress decisions. Therefore, to the extent they are analogous, the Court chooses not to follow them.

In *Forbes v.Merrill, Lynch, Fenner & Smith*, 957 F.Supp. 450 (S.D.N.Y.1997), the Court denied a motion to dismiss where the complaint alleged that after plaintiff disclosed that he was infected with the AIDS virus, his supervisor "humiliated him by screaming at him in public, made offensive comments about homosexuals and AIDS, inquired into plaintiff's sexual orientation, refused to meet with plaintiff in her office, and sprayed Lysol on telephones and desks used by plaintiff." *Id.* at 456. The court relied on two cases in arriving at its decision. The first is *Brown v. Bronx Cross County Med. Group*, 834 F.Supp. 105 (S.D.N.Y.1993), a case in which the court, citing no support and with minimal analysis, denied a motion to dismiss plaintiff's claim for intentional infliction of emotional distress against her employer, noting: "defendants' argument would be more appropriately couched as a motion for summary judgment than as a motion to dismiss for failure to state a claim, because it calls upon the Court to evaluate the evidence presented in plaintiff's complaint rather than to evaluate the legal feasibility of plaintiff's claim." *Id.* at 111. Brown is unpersuasive, and furthermore, the instant case, unlike *Brown* and *Forbes*, is before the Court on a summary judgment motion. Therefore, Brown and Forbes are not properly applicable to the present case. The second case relied upon by the *Forbes* court was the *Polley* decision, which the Court has already described as unpersuasive. The Court notes that *Forbes* may very well be one of those instances where "hard cases make bad law." *Hearst Corp. v. Goldberger*, 96 Civ. 3620, 1997 WL 97097 at *19 (S.D.N.Y. Feb.26, 1997) (Peck, M.J.) (citing cases) In any event, the Court chooses not to follow *Forbes*.

and ultimately ... intimidated into escorting the security officers to his home to conduct a search and into taking a lie detector test.

*Elson v. Consolidated Edison,* 641 N.Y.S.2d at 294.[7]

In *Kaminski,* the court denied a motion to dismiss where plaintiff, who had been a security guard at Riker's Island prior to his employment by the defendant, was

> accused ... of not having reported the receipt of a cash payment for a package. Plaintiff denied the charge. The [three] defendants told plaintiff he had been identified as the thief by two eye witnesses. They then allegedly began to threaten him with a criminal prosecution and a prison term at Riker's Island if plaintiff did not admit stealing the money, agree to return the money, resign, and waive his rights to all health, hospital and pension benefits. Plaintiff alleges that for three hours he was subjected to these threats which were accompanied by loud, aggressive, profane and obscene language and gestures. At all times one or another of the defendants was blocking the door to the office. Finally, [3 hours later] and allegedly under duress and still denying the accusation, plaintiff

signed resignation papers and documents relinquishing his pension plan and health and hospital benefits and statements admitting his guilt.

*Kaminski v. United Parcel,* 120 A.D.2d at 410–411, 501 N.Y.S.2d at 872.

Here, even if everything Mariani alleges were true, the instant case does not involve conduct that is so "outrageous in character, and ... extreme in degree" as that presented in *Elson* and *Kaminski.* Rather, the instant case is more akin to cases such as *Spence v. Maryland Cas. Co.,* 995 F.2d 1147, 1148–54, 1158 (2d Cir.1993), and *Bradley v. Consolidated Edison Co. of New York, Inc.,* 657 F.Supp. 197, 204–205 (S.D.N.Y. 1987). In *Spence,* the plaintiff had suffered beratement, harassment, intimidation, criticism, denial of a salary raise and threats of termination and demotion. In *Bradley,* the plaintiff suffered a conspiracy among her superiors to harass, demean and discriminate against her, received assignments that did not utilize her talents, and was denied proper compensation, advancement opportunities, and access to staff and office materials. In both cases, defendants were granted summary judgment on the intentional infliction

---

**7.** Like the present case, *Elson* involved a plaintiff with medical difficulties known to the defendant. As earlier explained, the New York courts have adopted the Restatement rule for intentional infliction of emotional distress. The Restatement sheds light on this issue:

> The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did know. *It must be emphasized again, however, that major outrage is essential to the tort....*

Restatement (Second) of Torts § 46 comment f (1965) (emphasis added). *Elson* involved conduct that was sufficiently outrageous to meet this standard; Mariani's case does not. *See, e.g., Owen v. Leventritt,* 174 A.D.2d 471, 571 N.Y.S.2d 25 (1st Dep't) (conduct not sufficiently outrageous despite knowledge of plaintiff's pregnancy), *appeal denied mem.,* 79 N.Y.2d 751, 579 N.Y.S.2d 651, 587 N.E.2d 289 (1991); *Ruggiero v. Contemporary Shells, Inc.,* 160 A.D.2d 986, 987, 554 N.Y.S.2d 708, 709 (2d Dep't 1990) (same); *Hoheb v. Pathology Assoc. of Albany,*

*P.C.,* 146 A.D.2d 919, 919–20, 536 N.Y.S.2d 894, 896 (3d Dep't 1989) (conduct not sufficiently outrageous despite knowledge of plaintiff's heart condition); *Spence v. Maryland Cas. Co.,* 995 F.2d 1147, 1152, 1157 (2d Cir.1993) (conduct not sufficiently outrageous despite knowledge of plaintiff's high blood pressure); *Coraggio v. Time Inc. Magazine Co.,* 94 Civ. 5429, 1995 WL 242047 at *7 (S.D.N.Y. April 26, 1995) (conduct not sufficiently outrageous despite knowledge of plaintiff's pregnancy); *Rooney v. Witco Corp.,* 722 F.Supp. 1040, 1044–45 (S.D.N.Y.1989) (conduct not sufficiently outrageous despite knowledge of plaintiff's fragile state due to terminal illness); *see also, e.g. Costello v. Gannett Satellite Information Network Inc.,* 939 F.Supp. 313, 315–17 (D.Vt.1996) (applying similar standard, conduct not sufficiently outrageous despite knowledge of plaintiff's depression), *aff'd mem.,* 112 F.3d 503 (2d Cir.1997); *Mancini v. General Elec. Co.,* 820 F.Supp. 141, 148–50 (D.Vt.1993) (applying similar standard, conduct not sufficiently outrageous despite defendant's knowledge that plaintiff was under psychiatric care for emotional problems); *Jackson v. Peoples Federal Credit Union,* 25 Wash.App. 81, 89–90, 604 P.2d 1025, 1030 (Wash.Ct.App.1979) (applying similar standard, conduct not sufficiently outrageous despite knowledge of plaintiff's diabetes).

of emotional distress claims because the conduct was not sufficiently outrageous and extreme to be actionable.

▪ Under all of the applicable decisions, Con Ed's (alleged) conduct against Mariani here is not sufficiently outrageous and extreme to make out a claim for intentional infliction of emotional distress ("IIED"), and defendants are entitled to summary judgment. *See also, e.g., Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983) (plaintiff was transferred and demoted for reporting fraud, told he would never advance, and then terminated in a viciously insulting manner designed to embarrass and humiliate; IIED claim dismissed); *Navarro v. Federal Paper Board Co.,* 185 A.D.2d 590, 591, 593–94, 586 N.Y.S.2d 381, 382, 384 (3d Dep't 1992) (plaintiff's arrest in front of coworkers; summary judgment for defendants on IIED claim); *Angel v. Levittown Union Free School Dist. No. 5,* 171 A.D.2d 770, 772–73, 567 N.Y.S.2d 490, 493 (2d Dep't 1991) (in circulated memoranda, plaintiff was called a thief and his work and character criticized; IIED claim dismissed); *Leibowitz v. Bank Leumi Trust Co. of New York,* 152 A.D.2d 169, 181–82, 548 N.Y.S.2d 513, 521 (2d Dep't 1989) (religious and ethnic slurs; IIED claim dismissed); *Misek–Falkoff v. Keller,* 153 A.D.2d 841, 841–42, 545 N.Y.S.2d 360, 361–62 (2d Dep't 1989) (e-mail circulated saying plaintiff needed "psychiatric treatment" and was like "an emotionally disturbed child"; IIED claim dismissed); *Martin v. Citibank, N.A.,* 762 F.2d 212, 220 (2d Cir.1985) (harassment and polygraphing of plaintiff and five other minority employees during an investigation of missing funds; jury verdict on IIED claim set aside); *Santan–Morris v. New York University Medical Center,* 96 Civ. 0621, 1996 WL 709577 at *3–5 (S.D.N.Y. Dec.10, 1996) (false embezzlement accusations; IIED claim dismissed); *Katz v. City of New York, Dept. of Transp.,* 94 Civ. 8319, 1996 WL 599668 at *11 (S.D.N.Y. Oct.17, 1996) ("The alleged actions by [defendant] that may have occurred ... include subjecting plaintiff to loud music on the radio, failing to provide her with a computer, constantly scrutinizing her and questioning her about her time, excluding her from staff meetings and any coworker interaction, isolating her in a room by herself for a period of time, and pressuring her to work harder than others. Such allegations, while troubling, do not amount to the extreme conduct required to show intentional infliction of emotional distress."; IIED claim dismissed) *Campbell v. Grayline Air Shuttle, Inc.,* 930 F.Supp. 794, 803–04 (E.D.N.Y.1996) (demotion, decreased work hours, denial of necessary supplies and space; IIED claim dismissed); *Sigmon v. Parker Chapin Flattau & Klimpl,* 901 F.Supp. 667, 671–74, 681–82 (S.D.N.Y.1995) (exclusion from firm activities, criticism, discrimination, and discriminatory comments, assigned little work, poor reviews; summary judgment for defendants on IIED claim); *Coraggio v. Time Inc. Magazine Co.,* 94 Civ. 5429, 1995 WL 242047 at *6 (S.D.N.Y. April 26, 1995) ("harassment consist[ing] of assigning plaintiff tasks normally performed by lower–level employees, complaining that plaintiff was unavailable when needed, calling plaintiff at home on scheduled days off and reprimanding her for not working, failing to send plaintiff copies of pertinent memoranda, raising difficulties with plaintiff about vacation time, usurping plaintiff's responsibilities, and generally isolating and ignoring her"; "it appears that she endured humiliating, even abusive treatment, but she was not subjected to atrocious, utterly intolerable conduct, surpassing all bounds of decency"; IIED claim dismissed); *Walsh v. National Westminster Bancorp., Inc.,* 921 F.Supp. 168, 174 (S.D.N.Y.1995) (plaintiff "asserts that NatWest's alleged retaliatory actions were devastating to her personally. She. alleges she was subjected to humiliating criticism and adverse performance reviews. She claims she was not allowed to travel and had her responsibilities taken away from her. But these assertions do not establish the actions she alleges were extreme or outrageous"; summary judgment for defendants on IIED claim); *Dirschel v. Speck,* 94 Civ. 0502, 1994 WL 330262 Lt *9 (S.D.N.Y. July 8, 1994) (plaintiff was excluded from meetings, not consulted on relevant matters, and treated with disrespect; IIED claim dismissed); *Walz v. American Stock Exchange, Inc.,* 91 Civ. 7964, 1992 WL 230132 at *3, *10–11 (S.D.N.Y. Sept.3, 1992) (employer as-

signed plaintiff unsophisticated tasks, excluded her from important meetings, isolated her in an inferior distant office, and granted her relatively small raises in retaliation for registering sex discrimination complaint arising out of her pregnancy; IIED claim dismissed); *Kirwin v. New York State Office of Mental Health,* 665 F.Supp. 1034, 1040 (E.D.N.Y.1987) (plaintiff was harassed, isolated, falsely accused of time abuse, given unjustifiably poor evaluations and improperly denied vacation time and personal leave time; "the complaint merely alleges insults, indignities, annoyances and petty oppressions which do not constitute outrageous conduct"; IIED claim dismissed); *Kovich v. Manhattan Life Ins. Co.,* 640 F.Supp. 134, 135–36 (S.D.N.Y.1986) (defendant forged plaintiff's time cards to portray her as habitually late and threatened that she would be blackballed in the industry should she file a complaint with the State Division of Human Rights; summary judgment for defendant on IIED claim); *Moye v. Gary,* 595 F.Supp. 738, 739–40 (S.D.N.Y.1984) (defendant "verbally harassed and insulted [plaintiff] in front of her daughter, and ... called [her] a 'fag' and a 'poor woman.'"; IIED claim dismissed); *Brink's Inc. v. City of New York,* 533 F.Supp. 1123, 1125 (S.D.N.Y.1982) (Weinfeld, J.) (demotion, harassment, and verbal abuse; summary judgment for employer on IIED claim).

Thus, even when all of defendants' conduct is considered, it is insufficient to support an intentional infliction of emotional distress claim.

### CONCLUSION

For the reasons set forth above, I recommend that the Court grant summary judgment for defendants Logis, Arceri and Con Ed.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Allen G. Schwartz, 500 Pearl Street, Room 1350, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Schwartz. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Services,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).